Ford and others vs. Smith and others, imp.

*March 18 — April 8, 1884.*

ESTATES OF DECEDENTS: FORECLOSURE OF MORTGAGE. *(1) Distribution: assignment of mortgage* in specie: *foreclosure. (2) Application of profits by mortgagee in possession: pleading. (3) Claim for profits against deceased mortgagee.*

1. If upon the settlement of an estate the residue consists in part of a note and mortgage, it may be assigned in that form to the persons entitled thereto. R. S., secs. 3940, 3942. The order of assignment has the effect of an order of distribution to transfer title to the persons named, and they may foreclose the mortgage.

Ford and others vs. Smith and others, imp.

2. In an action to foreclose a mortgage the answer alleged, "as a separate defense and counterclaim," that the mortgagee had been in possession of the premises under an agreement to apply a part of the profits to the payment of the mortgage debt, and stated the amount of profits earned by him. *Held*, that whether such facts constituted a counterclaim or not, evidence thereof was admissible under the answer as showing payment *pro tanto.*

3. A decedent had been in possession of property upon which he held a mortgage under an agreement to apply the profits to the payment of the mortgage debt. *Held*, that the right to have the profits so applied was not a claim which would be barred if not presented for allowance against the estate of such decedent.

APPEAL from the Circuit Court for *Rock* County.

Action to foreclose a mortgage of an undivided one-half of certain mill property, given to secure the payment of a note executed by the defendants *J. M. Smith* and *Mary C. Smith.* The complaint alleges the death of the mortgagee and the assignment of the note and mortgage, as a part of the residue of his estate, to the plaintiffs, substantially as stated in the opinion. The answer shows, among other things, that the mortgagee, Oliver B. Ford, and the defendant *Mary C. Smith* were tenants in common of the mill property; that the note and mortgage were given to secure to said mortgagee one half of the cost of a new mill erected thereon by him; and that after the erection of said mill in 1877, the mortgagee held possession of and operated the same until January 1, 1879, under an agreement to apply one half of the profits or earnings thereof to the payment of a mortgage of $600 thereon and of the mortgage in suit. The answer further denies that the estate of Oliver B. Ford is fully settled and alleges that it was the duty of the administrator to have accounted with *Mary C. Smith* as tenant in common of the mill, to have applied the one-half of the earnings thereof according to the agreement, and to have collected any sum which might remain unpaid on the note and mortgage in suit. The allegations of the answer stated in the opinion are then pleaded as "a separate defense and

counterclaim" by the defendants *Mary C. Smith* and *J. M. Smith.* The prayer of the answer is that the complaint be dismissed, or, if it be not dismissed, that an accounting of the rents and profits of the mill prior to January 1, 1879, be had, and that one half of such profits be applied according to the agreement above stated.

On the trial all evidence under the answer was excluded, and judgment of foreclosure was rendered for the full amount asked. The defendants appealed.

*A. Hyatt Smith,* for the appellants.

*A. A. Jackson,* for the respondents.

Cole, C. J. The objection that the plaintiffs failed to show they were the owners of the note and mortgage described in the complaint is not well taken. It clearly appears from the evidence that the note and mortgage were originally executed and delivered to Oliver B. Ford, who died intestate in November, 1880. He left as his widow the plaintiff *Marietta F.,* and children, the two plaintiffs *Oliver C.* and *Mary N.,* and William F. Ford. The latter sold and assigned his interest in the note and mortgage to *Oliver C.* Letters of administration were granted to *Oliver* in January, 1881, subsequent to William's assignment to him. Prior to February, 1882, *Oliver,* the administrator, settled the estate, and paid all debts against it. There remained a residue consisting of this note and mortgage and other property. Subsequently the county court of Rock county, on application duly made, allowed and settled the final account of the administrator, and ordered and assigned the residue of the estate, including the note and mortgage, to the plaintiffs, in the proportions mentioned in the order.

Now, we are unable to perceive why this order of the county court did not operate to vest the title to the note and mortgage in question in the plaintiffs. The learned counsel for the defendants says the note and mortgage were personal

property in the hands of the administrator, and should have been foreclosed by him, and the proceeds distributed. Doubtless the administrator might have foreclosed the mortgage, as the title was in him. But as all the debts were paid, was he bound in law to take that course? We can see no satisfactory reason for holding that he was. The statute gives the county court, on final settlement of the estate, ample authority to assign the residue to such persons as are by law entitled to the same. Sec. 3940, R. S. The statute further provides that when the county court shall make an order or judgment assigning the residue of any estate to two or more persons entitled to the same, it shall not be necessary to make partition or distribution of such estate, unless the parties to whom the assignment is made, or some of them, shall request it. Sec. 3942. The statute manifestly intends that the order of assignment shall operate to transfer the legal title of the personal property to the persons therein named. It has in law really the same effect as an order of distribution. It follows from this view that the evidence showed that the title to the note and mortgage was in the plaintiffs, who can maintain this foreclosure action.

But another objection is taken which seems to us fatal to the judgment rendered. In their answer the defendants allege in substance that Oliver B. Ford remained in possession of the mortgaged property,— which was a mill,— under a promise and agreement made in the summer of 1877 that he would operate the mill on joint account as a tenant in common, and would apply one half of the profits or earnings to the payment of a mortgage or liens which he had on the undivided one-half of the property, which was the interest mortgaged. It is then averred that Ford continued to run and operate the mill under this agreement for fifteen months prior to the 1st of January, 1879; that the reasonable earnings and profits were not less than $500 per month on the average, one half of which sum Ford, by the agree-

ment, was bound in law and equity to apply first in pay-
ment of a mortgage of $600 therein described, the residue
of such earnings to be applied in payment of the note and
mortgage in suit. These are the material portions of the
last part of the answer. On the trial the defendants pro-
posed to prove these matters set up in the answer, but the
evidence was objected to and excluded by the court.

We are at a loss to understand upon what ground this
testimony was excluded. Its obvious tendency was to prove
payment in part of the note and mortgage in suit. If the
mortgagee while in possession had received earnings in
operating the mill which he had agreed to, but had failed
to, apply on the note and mortgage, could not these facts be
shown in this action? It seems to us they could. In the
absence of any agreement equity will require the mortgagee
in possession to account for rents and profits. But here the
answer alleges that there was an express agreement to apply
one half of the net earnings in discharge of the note and
mortgage. That evidence was admissible to prove the an-
swer in this regard, is a proposition which seems too plain to
require discussion. It is true there is language in the answer
which claims that these earnings were in the nature of a
setoff or counterclaim. It is said that they would not be a
proper setoff against the note and mortgage. However that
may be, the facts are stated, and it is apparent that under
the alleged agreement one half the earnings were to be ap-
plied in payment of the note and mortgage in suit after the
$600 mortgage was discharged. Therefore, whether these
earnings would amount to a counterclaim or setoff or not is
a question we need not consider. It is sufficient to say that
they would surely be payment *pro tanto* of the note and
mortgage in the hands of the plaintiffs.

It is insisted by plaintiffs' counsel that these earnings would
constitute a claim in favor of *Mary C. Smith* against the
estate of Oliver B. Ford, which should have been presented

with other claims for allowance by the county court or commissioners, and, because not so presented, that it is now barred by the statute. But, in the language of the counsel on the other side, the conclusive answer to that position is that neither the defendants, nor either of them, had any claim against the estate of Oliver B. Ford which could be presented for allowance. For in equity, as well as by force of the agreement, one half of the net earnings of the mill was to be applied in payment of the note and mortgage, and when it should be thus applied it would extinguish so much of the mortgage debt. There would therefore be no claim which the defendants could present for allowance, as under the circumstances they would have the benefit of the earnings, because they were thus applied. In any view, the judgment must be reversed and a new trial had, in order to give the defendants an opportunity to prove the facts stated in their answer.

*By the Court.*— It is so ordered.