MERRITT et al. v. AMERICAN STEEL-BARGE CO.

(Circuit Court of Appeals, Eighth Circuit. March 1, 1897.)

No. 741.

1. COURTS — CONCURRENT JURISDICTION — POSSESSION OF RES — SUITS IN PERSONAM.

While, in cases in which a court has taken, or, in order to administer the relief sought, may be compelled to take, possession of specific real or personal property to which the suit relates, the court which first acquires jurisdiction of the cause is entitled to retain it, to the exclusion of any other court, this rule does not apply to suits merely in personam, though involving the same issues; and the pendency of such a suit in one jurisdiction does not prevent a party thereto from bringing a similar suit, involving the same issues, against the other party, in another jurisdiction.

2. CORPORATIONS—CERTIFICATES OF STOCK—SUIT TO ESTABLISH LIEN—SUBSTITUTED SERVICE.

Though certificates of corporate stock are technically only written evidences of interests in the corporate property, they are so far in the nature of chattels that, when certificates of stock in a corporation of one state are held in pledge or as collateral in another state, the courts of such latter state are authorized to proceed to establish a lien thereon in a suit commenced by substituted service, under a statute authorizing such service in suits to establish liens on personal property within the state.

3. APPEAL AND ERROR—REVIEW—PLEA OF RES JUDICATA—DEMURRER.

In reviewing a decision sustaining a demurrer to a plea which alleges that a judgment set up in bar of the action was rendered upon due and proper notice, and that the court had and acquired jurisdiction of the subject-matter and the parties, the appellate court must take such allegations as true, and cannot look into exhibits attached to the answer in the case to ascertain whether the judgment does in fact show all the elements of jurisdiction.

In Error to the Circuit Court of the United States for the District of Minnesota.

This case was before this court, at the May term, 1896, on a motion to dismiss the writ of error. Merritt v. Barge Co., 40 U. S. App. 127, 21 C. C. A. 525, and 75 Fed. 813. On the present occasion it is here for determination on the merits. Alfred Merritt and Leonidas Merritt, the plaintiffs in error, who were the plaintiffs below, on April 10, 1894, sued the American Steel-Barge Company, the defendant in error, in the district court for St. Louis county, state of Minnesota, to recover the value of 11,331.3 shares of stock in the Lake Superior Consolidated Iron Mines. The complaint alleged, in substance, the following facts: That in the months of January and February, 1893, the plaintiffs borrowed of Charles W. Wetmore $432,575, giving as an evidence of such indebtedness their five negotiable promissory notes, which were secured by the pledge of certain shares of stock in the Duluth, Missabe & Northern Railway Company and in the Mountain Iron Company and the Missabe Iron Company, the shares of stock in said railway company alone being of the value of $565,000; that at the time said loan was effected it was agreed that said Wetmore "should not repledge, sell, or dispose of" any of said stock, and that, if the plaintiffs so desired, the first four of the aforesaid notes should be extended for a period of six months from their maturity; that on April 24, 1893, said Wetmore, in violation of his agreement, transferred all the shares of stock in said railway company by him held in pledge to John D. Rockefeller, as security for an individual debt which he owed to said Rockefeller, which stock was at the time fairly worth $565,000; that the plaintiffs had elected to waive the tort thus committed by said Wetmore, and to consider the transaction last aforesaid as a sale of the stock by said Wetmore for their benefit; that on March 13, 1893, said Wetmore had further converted to his own use certain bonds belonging to the plaintiffs, which were of the value of $90,000, and

that the plaintiffs had further elected to treat the conversion of said bonds as a sale of the same by said Wetmore for their account; that after these several transactions said Wetmore had sold and transferred the five promissory notes heretofore mentioned, and the remaining shares of stock which had been pledged to secure the payment of the same, to the American Steel-Barge Company; that said Wetmore was at the time the vice president and chief managing officer of said barge company; that said notes and stocks were so transferred to the barge company to secure an indebtedness of said Wetmore to said company which had been theretofore contracted; that at the time of such transfer said barge company well knew the terms and conditions under which the said Wetmore held the aforesaid notes and stock, and that he had no right or authority to make the transfer in question; that after the last-mentioned transfer the barge company had converted the stocks by it received into 11,331.3 shares of the capital stock of the Lake Superior Consolidated Iron Mines, a corporation organized under the laws of New Jersey; that the plaintiffs had demanded of the barge company the surrender and return of the stocks last aforesaid; that it had refused to accede to such request; and that the plaintiffs had thereupon elected to waive the tort so committed, and to sue the barge company in assumpsit for the value of the shares of stock by it received and retained. The case was removed by the barge company, it being a corporation organized under the laws of New Jersey, from the state court to the circuit court of the United States for the district of Minnesota on April 18, 1894. After such removal the barge company filed an amended answer to the aforesaid complaint, whereby, among other defenses, it interposed the following plea, in substance: That being the legal owner and holder of the five promissory notes referred to in the complaint, and having in its possession, as pledgee, the collateral attached thereto, consisting of 11,331.3 shares of stock in the Lake Superior Consolidated Iron Mines, it had attempted, after the maturity of said notes, and prior to May 18, 1894, to sell the collateral at public auction in the city of New York, where the notes were made payable, for the purpose of satisfying said notes, but that it had been prevented from so doing by an injunction restraining such sale, which had been obtained by the plaintiffs, Alfred Merritt and Leonidas Merritt, in an action brought by them against the defendant barge company in the supreme court of the city and county of New York; that said action so brought by the plaintiffs was dismissed by them prior to a final judgment therein, whereupon the barge company, in May, 1894, had itself brought a suit in said supreme court of the city and county of New York against Alfred Merritt and Leonidas Merritt for the purpose of determining the rights of the parties in and to the five promissory notes mentioned in the complaint, and in and to the aforesaid 11,331.3 shares of stock held as collateral thereto; that in the suit so instituted by the barge company it prayed judgment that the defendants in said suit might be excluded from any interest in said notes, and in said shares of stock so pledged as collateral, except as subordinate to the lien of the barge company; that the lien of the latter company upon said stock might be fixed and defined; that the right to sell the same for the satisfaction of the five notes by it held might be established; that said stock might be sold pursuant to the decree of the court; and that the proceeds might be applied to the payment of said notes. The plea further averred that said notes were payable in the city of New York; that when said suit was brought by the barge company the certificates representing the shares of stock in controversy were situated in the city of New York, and were subject to the jurisdiction of the supreme court for the city and county of New York; that said court then and there had full jurisdiction of said stock for the purpose of establishing and foreclosing the alleged lien of the barge company; that after due proceedings had in said court a final decree was rendered in accordance with the prayer of the complaint, whereby the said Alfred Merritt and Leonidas Merritt were excluded from all interest in said notes and stock, except as subordinate to the lien of the barge company, and whereby the barge company's title to the notes and its title to the stock, as a pledgee thereof, were established, and whereby the stock was adjudged to be sold at public auction and the proceeds thereof applied to the payment of the aforesaid notes. The plea further averred that the judgment and decree last aforesaid was rendered upon due and proper notice to the defendants, Alfred Merritt and Leonidas Merritt, and upon testimony duly and properly

taken, proving all of the allegations contained in the bill of complaint; that pursuant to the decree so obtained the stock in question was afterwards sold at public auction; and that at such sale it was purchased by the barge company, on the 24th day of October, 1894, for the sum of $25,000. To the aforesaid plea setting up the proceedings in the supreme court of the city and county of New York as a bar to the present action, the plaintiffs demurred, but the demurrer was overruled. Subsequently, the plaintiffs, having declined to reply to the facts alleged in the aforesaid plea, a judgment was rendered on the pleadings in favor of the defendant. The writ of error is brought to reverse that judgment.

A. A. Harris and Henry E. Harris, for plaintiffs in error.

James H. Hoyt and Frank B. Kellogg (Cushman K. Davis and C. A. Severance with him on brief), for defendants in error.

Before CALDWELL and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The suit which was instituted in the supreme court of the city and county of New York by the American Steel-Barge Company against Alfred Merritt and Leonidas Merritt, the plaintiffs in this suit, according to the averments of the plea, was an action to establish and foreclose a lien on personal property alleged to be situated in New York, and it was brought under the provisions of a local statute of that state which authorized such a proceeding to be maintained on constructive or substituted service. Code Civ. Proc. N. Y. 1877, §§ 438–444, inclusive. It was a suit in the nature of a proceeding in rem, and it retained that character to the end, inasmuch as the defendants, although served with summons outside of the state of New York, as provided by the laws of that state, did not appear at any stage of the proceedings so as to authorize the rendition of a personal judgment against them. The fundamental fact to be alleged and proven in such proceeding was the existence of a valid lien in favor of the barge company upon the property in controversy, to wit, 11,331.3 shares of stock in the Lake Superior Consolidated Iron Mines. On the other hand, it appears from the complaint in the case at bar that it was a suit which was brought upon the theory that the barge company had no lien upon the property in question, and that it had rendered itself liable to the plaintiffs for the value of said property by refusing to restore it to the plaintiffs when a return thereof was demanded. The plaintiffs do not deny the practical identity of the issues in the two suits, —the one pending in Minnesota, and the other in New York,—and they concede, as we understand, that because the issues were identical, each having reference to the existence of the alleged lien, the judgment of the New York court with respect thereto was well pleaded in bar to the present action, provided the New York court rightfully proceeded with the hearing and determination of the case before it, notwithstanding the pendency of the prior suit in Minnesota, and provided, further, that the New York court acquired lawful jurisdiction of the subject-matter. Assuming the proposition so conceded to be correct, we proceed to inquire whether, as is contended by the plaintiffs in error, the fact that the Minnesota

suit was first brought precluded the New York court from entertaining jurisdiction of the suit which was subsequently instituted in that forum.

The doctrine is well settled that when a court, in the progress of a suit properly pending before it, takes possession of property, either under a writ of replevin or attachment, or by other mesne or final process, or by the appointment of a receiver or assignee, its jurisdiction over the property for the time being becomes exclusive, and no other court can lawfully interfere with the possession so acquired. While property is so held it cannot be sold under the judgment, sentence, or decree of any other tribunal. Moreover, so long as the property remains in custodia legis, no other court, unless by special leave of the court which first acquired jurisdiction, can lawfully proceed with the trial and determination of a suit the object of which is to establish a lien against the property, or to subject the specific property to the payment of debts, or which may result in creating conflicting rights or titles thereto. The possession of the res vests the court which has first acquired jurisdiction with the power to hear and determine all controversies relating thereto, and for the time being disables other courts of co-ordinate jurisdiction from exercising a like power. This rule is essential to the orderly administration of justice, and to prevent unseemly conflicts between courts whose jurisdiction embraces the same subjects and persons. Freeman v. Howe, 24 How. 450; Peck v. Jenness, 7 How. 612, 624, 625; Taylor v. Carryl, 20 How. 583, 596, 597; Wiswall v. Sampson. 14 How. 52; Covell v. Heyman, 111 U. S. 176, 4 Sup. Ct. 355; Heidritter v. Oil-Cloth Co., 112 U. S. 294, 302, 5 Sup. Ct. 135; Riggs v. Johnson Co., 6 Wall. 166, 196; Central Trust Co. of New York v. South Atlantic & O. R. Co., 57 Fed. 3. The doctrine in question is not limited in its application to cases where property has actually been seized under judicial process before a second suit is instituted in another court, but it applies as well where suits are brought to enforce liens against specific property, to marshal assets, administer trusts, or liquidate insolvent estates, and in all other suits of a similar nature, where, in the progress of the litigation, the court may be compelled to assume the possession and control of specific personal or real property. In cases of the latter kind, the rule is that the tribunal which first acquires jurisdiction of the cause by the issuance and service of process is entitled to retain it to the end, without interference or hindrance on the part of any other court. And this rule, in its application to federal and state courts, being the outgrowth of necessity, is "a principle of right and of law," which leaves nothing to the discretion of a court, and may not be varied to suit the convenience of litigants. Gates v. Bucki, 12 U. S. App. 69, 4 C. C. A. 116, and 53 Fed. 961; Chittenden v. Brewster, 2 Wall. 191; Orton v. Smith, 18 How. 263, 265; Union Trust Co. v. Rockford, R. I. & St. L. R. Co., 6 Biss. 197, 24 Fed. Cas. 704; Owens v. Railroad Co., 20 Fed. 10; Union Mut. Life Ins. Co. v. University of Chicago, 6 Fed. 443. In the cases of Wallace v. McConnell, 13 Pet. 135, and Five Hundred and Five Thousand Feet of Lumber, 24 U. S. App. 509, 12 C. C.

A. 628, and 65 Fed. 236, the doctrine under consideration was extended to garnishment proceedings brought in the courts of a state while the existence of the indebtedness was in litigation in a federal court. It was held, in substance, that, while the alleged debtor was contesting the existence of the debt in a suit brought against him in the federal court, the debt could not be attached by a third party under process emanating from a state court. And in the case of Sharon v. Terry, 36 Fed. 337, where a suit had been brought in the federal court to compel the surrender and cancellation of a paper purporting to be a written declaration of marriage, and to restrain the use thereof on the ground that it was a forgery, and a suit for divorce had subsequently been brought in a state court, wherein the writing was found to be genuine, Mr. Justice Field declined to recognize the latter adjudication; holding that, as the federal court had first acquired jurisdiction of the controversy to compel the surrender and cancellation of the forged document, it was not bound to adopt the finding of the state court that the document was genuine.

It does not follow, however, that the rule of comity to which we have referred operates to prevent a court from taking jurisdiction of a cause in all cases where a prior suit involving the same issue or issues has been commenced in some other forum, and jurisdiction has been acquired by such other court over the parties litigant. Whether the pendency of a prior suit has such effect depends, as Mr. Justice Miller remarked, in substance, in Buck v. Colbath, 3 Wall. 334, 335, upon the character of the prior suit, the nature of the remedy and the relief sought, and the identity of the parties. If the prior action does not deal either actually or potentially with specific property or objects, but is strictly a suit in personam, in which nothing more than a personal judgment is sought, no reason is perceived why a subsequent action may not be brought and maintained in another jurisdiction, although it involves the determination of the same issue or issues on which the right to recover in the first suit depends. The bringing of such second suit, under the circumstances supposed, does not oust the court in which the first suit was instituted of its jurisdiction, or delay or obstruct it in the exercise of its jurisdiction, or lead to a conflict of authority, where each court acts in accordance with well-established rules of law. Although a judgment may be rendered in the second suit before the first suit is tried, and may be pleaded in bar in the latter suit because the issue and the parties to the two suits are the same, yet it has never been supposed that the fact that a judgment of another court is offered in evidence to conclude the parties on a given issue or issues either defeats or impairs its jurisdiction, or has any necessary tendency to occasion a conflict of authority. Whatever doubt we might otherwise entertain concerning the question whether the pendency of a suit strictly in personam has the effect of preventing a party to that suit from subsequently bringing a suit in another jurisdiction involving the same issue, and from pleading the judgment there recovered as an estoppel in the former action, is resolved by the fact that in a number of cases such prac-

tice has been sanctioned by the highest authority. Thus, in Stanton v. Embrey, 93 U. S. 548, the plaintiff first brought a suit in personam in the superior court of New London county, state of Connecticut, and while it was there pending and undetermined he brought a suit on the same cause of action in the supreme court of the District of Columbia. A plea of lis pendens was interposed in the latter suit, and was overruled; the court holding that the pendency of the suit in Connecticut did not prevent the bringing, nor the prosecution to final judgment, of a suit in the District of Columbia. In Insurance Co. v. Harris, 97 U. S. 331, suits were brought by Harris, as assignee of William H. Brune, who was himself an assignee of certain insurance policies, against the Mutual Life Insurance Company of New York, in the circuit court of the United States for the district of Maryland. Prior thereto a suit had been commenced by Mrs. Barry, the beneficiary named in the policies, in the supreme court of New York, against said William H. Brune and the insurance company, to recover the policies and have the assignment thereof to said Brune declared to be void. In the suit brought in New York, the insurance company filed an answer and a bill of interpleader, and obtained an order on the bill of interpleader permitting it to pay the amount due on the policies into court, and restraining the several claimants of the policies from prosecuting actions against it after the money had been so paid. At what precise time the bill of interpleader was so filed, with reference to the commencement of the suit in the district of Maryland, does not appear; but the supreme court, through Mr. Justice Strong, declared that it was "perfectly immaterial whether the New York court first obtained jurisdiction of the subject and the parties," as the order made by the New York court on the bill of interpleader would in any event prevent a recovery against the insurance company in the suit pending in the district of Maryland, inasmuch as that order had been made before the latter suit was brought to trial. In the case of Buck v. Colbath, 3 Wall. 334, 345, while discussing the effect to be given to the pendency of a prior suit, the supreme court said:

"But it is not true that a court, having obtained jurisdiction of a subject-matter of a suit and of parties before it, thereby excludes all other courts from the right to adjudicate upon other matters having a very close connection with those before the first court, and in some instances requiring the decision of the same questions exactly."

And in Standley v. Roberts, 19 U. S. App. 407, 421, 8 C. C. A. 305, and 59 Fed. 836, this court said:

"There is no doubt that, in a suit in which the court obtains jurisdiction by the seizure or control of the subject-matter of the suit, the court which first acquires jurisdiction over it may retain the property in its custody until final judgment, and in many cases until such judgment is satisfied, and that it may use its writ of injunction or other proper process to effect this result. * * * It is equally well settled that the pendency of an action in one court will not bar or abate another action between the same parties, involving the same issues, in a court of co-ordinate jurisdiction, in which that jurisdiction is exercised, not by the seizure of the property, but by personal service of original process upon the defendants."

The decisions of the state courts likewise support the view that the pendency of a suit which is strictly a suit in personam will not prevent the commencement of a suit in another forum which involves the determination of the same issue or controversy. Paine v. Insurance Co., 11 R. I. 411; Duffy v. Lytle, 5 Watts, 120; Child v. Powder Works, 45 N. H. 547; Allis v. Davidson, 23 Minn. 442; Poorman v. Mitchell, 48 Mo. 45; Railroad Co. v. Grayson, 88 Ala. 572, 7 South. 122; Rogers v. Odell, 39 N. H. 452; Bank of U. S. v. Merchants Bank of Baltimore, 7 Gill, 415; Westcott v. Edmunds, 68 Pa. St. 34. In the case of Sharon v. Terry, 36 Fed. 337, 359, 360, it was conceded by Mr. Justice Field that a plaintiff has a right to sue on the same cause of action in different jurisdictions, where nothing more than a personal judgment against the defendant is demanded; and, if such be the law, we can see no sufficient reason for denying the right of a defendant who has been sued in one jurisdiction for the recovery of a personal judgment against him, to bring an action against the plaintiff in another jurisdiction, although that action is of such nature that it may require a determination of the same issue which is involved in the first suit. We are of opinion, therefore, that the New York judgment was entitled to full faith and credit when pleaded in the case at bar, notwithstanding the fact that it was rendered in another jurisdiction, in an action which was there commenced after the suit at bar had been instituted, and after the court, in the case in hand, had acquired jurisdiction of the parties by the issuance and service of process. The latter action was a suit in personam, in which the only relief sought, or that could be afforded, was a money judgment against the barge company for the alleged wrongful conversion of the stock. Moreover, the bringing of such suit was an irrevocable election on the part of the plaintiffs to abandon all claim to the stock, and in lieu thereof to demand a judgment for its value. Butler v. Hildreth, 5 Metc. (Mass.) 49; Thompson v. Howard, 31 Mich. 309; Morris v. Rexford, 18 N. Y. 552; Town of Hartland v. Hackett, 57 Vt. 96; Rodermund v. Clark, 46 N. Y. 354; McDonald v. Pike, 60 Wis. 222, 19 N. W. 44; Kennedy v. Thorp, 51 N. Y. 174, 176; Terry v. Munger, 121 N. Y. 161, 24 N. E. 272. Under these circumstances, it must be conceded that the barge company was at liberty to bring an action to foreclose its alleged lien on the stock, if the laws of New York authorized a proceeding of that kind, and in so doing no rule of comity was violated. It must be further conceded, we think, that the conduct of the barge company in bringing the suit to foreclose its lien finds some justification in the fact that its right to sell the stock as pledgee had been challenged by the plaintiffs in the injunction suit brought in the supreme court of New York to restrain the sale, and that by such proceeding its title as pledgee had become clouded.

It is next insisted that the judgment of the supreme court of New York was void because the plea interposed by the defendant showed that the stock to which the suit in New York related was the stock of a New Jersey corporation, over which the courts of New York could exercise no jurisdiction or control. The rule of law is not

disputed that, in a suit commenced and prosecuted upon constructive or substituted service of process, the courts of a state or country may lawfully adjudicate on the title to real or personal property situated within its borders, or upon liens or claims against property which is so situated, provided they are authorized to do so by local statutes. Arndt v. Griggs, 134 U. S. 316, 10 Sup. Ct. 557. It is contended, however, that this rule has no application to the stock of a foreign corporation, that stock certificates are mere evidence of the ownership of stock, and that the stock of a corporation can have no situs outside of the state in which the corporation was created. Speaking technically, it is true that a stock certificate is written evidence of a certain interest in corporate property. The same may be said of notes and bills. They are simply evidence of indebtedness on the part of the individuals or corporations who issue them. But in the business world such obligations or securities are treated as something more than mere muniments of title. They are daily bought and sold like ordinary chattels, they may be hypothecated or pledged, they have an inherent market value, and, while differing in some respects from chattels, they are generally classified as personal property. Allen v. Pegram, 16 Iowa, 163, 173; 1 Cook, Stock, Stockh. & Corp. Law, § 12; Schouler, Pers. Prop. § 482; Bank v. Byram (Ill.) 22 N. E. 842. Stock certificates may be made the subject-matter of a suit in replevin, and, if they are dealt with wrongfully by the person having the possession thereof, a suit for the conversion of the stock may be maintained, as the present action and many others will serve to demonstrate. McAllister v. Kuhn, 96 U. S. 87, 89. In some states, certificates of stock in a foreign corporation are subject to garnishment (Bank v. Mather [Minn.] 62 N. W. 396), while in other states, owing in a measure to a difference in local laws, they are not subject to such process, or at least stock in a foreign corporation cannot be reached and subjected to the payment of debts merely by notice or process served upon the officers of the corporation while they are within the state in which the attachment proceedings are instituted (Plimpton v. Bigelow, 93 N. Y. 592). It must be admitted, however, that stock in a corporation may be transferred by the owner, without any action on the part of the corporation, so as to vest a good title thereto in the transferee, by a simple transfer of the stock certificate, since it is now well settled that regulations made by a corporation for the transfer of stock on its books are for its own convenience and protection; that they are simply cumulative, and do not operate as a prohibition against other modes of transfer. Bank of Commerce v. Bank of Newport, 27 U. S. App. 486, 11 C. C. A. 484, and 63 Fed. 898; Horton v. Mercer, 36 U. S. App. 234, 18 C. C. A. 18, and 71 Fed. 153; McNeil v. Bank, 46 N. Y. 331, and cases cited. The New York statute under which the suit in New York was instituted authorizes a proceeding on substituted service "where the complainant demands judgment that the defendant be excluded from a vested or contingent interest in, or lien upon, specific real or personal property within the state; or that such an interest or lien in favor of either party be enforced, regulated, defined

or limited, or otherwise affecting the title to such property." Code Civ. Proc. N. Y. 1877, § 438. In view of the foregoing considerations, we are of opinion that stock certificates are personal property, within the purview of the foregoing statute, and that when such certificates are held in pledge, or as collateral, within the state, the courts of that state have jurisdiction to establish the existence of a lien thereon, and to enforce the same by directing a sale of the property.

It is urged finally that the judgment of the supreme court of New York is a nullity, because the proper affidavit was not made and filed to authorize an order of publication or service of summons outside of the state of New York, that the filing of such affidavit was jurisdictional, and that the failure to file an affidavit stating all the facts necessary to be stated rendered all subsequent proceedings in the suit void. The order made by the New York court authorizing service outside of the state contains a recital showing that all the facts necessary to warrant the order had been duly proved to the satisfaction of the court by affidavits; and counsel for the defendant company insist that such recitals are in themselves sufficient in a collateral proceeding, although the affidavits upon which the order was obtained were inadvertently omitted from the judgment roll in making up the exemplified copy. We do not find it necessary, however, to notice the latter contention. The case was decided in the trial court on demurrer to the plea, and on a subsequent motion for judgment on the pleadings, after the plaintiffs had declined to take issue with the facts averred in the plea. There is nothing to show that the point last urged by the plaintiffs was raised or considered by the trial court, and in any event, this being a law case, we think we cannot go outside of the facts averred in the plea, and make an examination of exhibits attached to the answer. The plea itself avers that the New York "judgment and decree was rendered upon due and proper notice to the defendants"; also, that "the court then and there had and acquired jurisdiction of the subject-matter of said cause, and jurisdiction over said stock and notes, and of the parties defendant for the purpose of such action." These were material averments which were admitted by the demurrer to the plea, and they preclude us from examining the judgment roll with a view of ascertaining whether it supports the averments of the plea. It is also proper to add that counsel for the defendant company have appended to their brief copies of the affidavits on which the order of publication was obtained in the supreme court of New York, and they clearly satisfy every requirement of the statute, so that in any event there would seem to be no real foundation for the contention that the order of publication was not made upon a proper showing of jurisdictional facts. Finding no error in the record, the judgment of the circuit court must be affirmed, and it is so ordered.