McKINNEY et al. v. LANDON et al.

FIDELITY TITLE & TRUST CO. v. SAME.

(Circuit Court of Appeals, Eighth Circuit. November 4, 1913.)

Nos. 4,008, 4,009.

1. COURTS (§ 500*)—FEDERAL AND STATE COURTS—CONFLICTING JURISDICTION.
   On a motion in a federal court for an order directing its receivers to turn over the property of a corporation to receivers appointed by a state court after a hearing, the federal court cannot review the findings of the state court based on evidence, but is limited to a consideration of the question of priority of jurisdiction.
   [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1407, 1408; Dec. Dig. § 500.*]

2. COURTS (§ 489*)—JURISDICTION—APPOINTMENT OF RECEIVERS—FOREIGN CORPORATIONS.
   As regards its business and property within a state, a foreign corporation is subject to the local law, and under Gen. St. Kan. 1909, § 5146, prohibiting a foreign corporation which violates the anti-trust laws of the state from doing business therein and making it the duty of the Attorney General to enforce such prohibition by appropriate proceedings a District Court of the state, vested with both equitable and legal powers, to be exercised as conditions require in a single action, has jurisdiction to appoint receivers for the business and property of such a corporation within the state at suit of the Attorney General, charging the unlawful absorption by the corporation of the property of domestic corporations.
   [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1324–1330, 1333–1341, 1372–1374; Dec. Dig. § 489.*]

3. COURTS (§ 493*)—FEDERAL AND STATE COURTS—PRIORITY OF JURISDICTION.
   By the bringing of such an action under the statute in which a receivership is prayed for, the state court acquires jurisdiction over the property of the corporation within the state to the exclusion of a federal court in a suit subsequently brought therein, although the latter first appointed receivers.
   [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1346–1352; Dec. Dig. § 493.*
   Conflict of jurisdiction with state courts, see note to Louisville Trust Co. v. City of Cincinnati, 22 C. C. A. 356.]

4. COURTS (§ 489*)—FOREIGN CORPORATIONS—SUBJECTION TO STATE LAWS—VIOLATION OF ANTI-TRUST LAWS.
   A foreign corporation engaged in interstate and local commerce may be adjudged guilty of a violation of the anti-trust laws of the state, its li-

cense to do business in the state may be canceled, and a receiver for all its property therein appointed under the general laws in aid of the enforcement of the judgment; and it is no defense that such property included instrumentalities used by it in conducting its interstate business, or that the corporation by the same course of conduct has also violated the similar laws of the United States.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1324–1330, 1333–1341, 1372–1374; Dec. Dig. § 489.*]

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock and Ralph E. Campbell, Judges.

Suits in equity by John L. McKinney and by the Fidelity Title & Trust Company against John M. Landon and others. From orders directing the receivers to surrender certain property to receivers appointed by a state court, complainants appeal. Affirmed.

For opinion below, see McKinney v. Kansas Natural Gas Co., 206 Fed. 772.

These are appeals from a decree of the District Court of the United States for the District of Kansas directing receivers appointed by it to surrender certain property to receivers appointed by the district court of Montgomery county, Kan.

On January 5, 1912, the state of Kansas by its Attorney General brought an action in the district court of Montgomery county, Kan., against the Kansas Natural Gas Company, the Independence Gas Company, and the Consolidated Gas, Oil & Manufacturing Company. The Kansas Natural Gas Company is a Delaware corporation which had obtained a license or privilege to do business in Kansas where most of its property is located. The other two defendants were organized under the laws of the state of Kansas. The action was in quo warranto and under the anti-trust laws of the state. It was charged that the three defendants had entered into a series of unlawful contracts, agreements, trusts, and combinations to control, restrict, restrain, and monopolize the production, distribution, and sale of natural gas and to increase the cost thereof to consumers; also, that they were guilty of a "perversion, misuse, and abuse of the corporate powers and privileges granted to them" by the state; that the Independence Company had been reorganized into the Consolidated Company, and all of the property and franchises of the latter had been unlawfully taken over and absorbed by the Kansas Natural Gas Company with the further result that the two Kansas corporations were disabled from performing their duties as public service agencies. There was a prayer for an exhaustive decree embracing the ouster of the three defendants from the exercise of their corporate powers and privileges within the state, the appointment of receivers to take charge of their property and business, as well as other relief necessary fully to correct the wrongs and abuses complained of.

On September 30 and October 1, 1912, this cause was tried in the district court of Montgomery county and was taken under advisement.

On October 7, 1912, the appellant McKinney as the holder of second mortgage bonds of the Kansas Natural Gas Company filed, for himself and such other creditors as might join him, in the District Court of the United States for the District of Kansas, a creditors' bill against that company alleging its insolvency and praying the appointment of receivers and the marshaling and distribution of its assets.

On October 9, 1912, the United States District Court appointed receivers; the defendant Kansas Natural Gas Company having appeared, confessed the bill, and joined in the prayer. This receivership embraced property in Kansas, Missouri, and Oklahoma. In due course the receivers took possession.

On October 19, 1912, the appellant Fidelity Title & Trust Company, as trustee for the first mortgage bondholders of the Kansas Natural Gas Company, was on its intervening petition made a party plaintiff in the McKinney

suit as of October 7th; and, the defendant confessing the averments of the petition, the receivership was extended nunc pro tunc.

On February 3, 1913, the Kansas Natural Gas Company having defaulted in interest on its first mortgage bonds, the Fidelity Title & Trust Company as trustee filed in the District Court of the United States for the District of Kansas an independent bill in foreclosure against the Kansas Natural Gas Company. The Delaware Trust Company as trustee in the second mortgage was also made defendant. The prior receivership in the McKinney suit was extended over the foreclosure suit.

On February 13, 1913, the state court decided the cause pending before it, in favor of the state of Kansas. Its decree recites that the Independence Gas Company had forfeited its right to exist as a corporation and should be dissolved; the Consolidated Gas, Oil & Manufacturing Company had unlawfully perverted and abused its corporate privileges and had been a willing and active participant with the Kansas Natural Gas Company in a combination in restraint of trade and commerce in natural gas within the state of Kansas; the former had disabled itself from performing its corporate functions under its charter and discharging its duty to the public, and had subjected itself illegally to the dominion and control of the Kansas Natural Gas Company; the Kansas Natural Gas Company unlawfully had possession of the property and franchises of the Consolidated Gas, Oil & Manufacturing Company and was a trust and monopoly and had secured the monopoly of the production, distribution, and sale of natural gas in the state of Kansas and illegally acquired the power, which it was exercising, to dictate prices to the producer and consumer of that commodity, that the Consolidated Gas, Oil & Manufacturing Company should resume possession and control of its properties illegally held by the Kansas Natural Gas Company, and that receivers thereof should be appointed and further participation in the illegal combination restrained; the Kansas Natural Gas Company should be ousted of its Kansas privileges and enjoined from interfering with the corporate property and powers of the Consolidated Gas, Oil & Manufacturing Company, and that receivers of the property in Kansas of the Kansas Natural Gas Company should be appointed so that the court might take charge of and manage it until the perversions and abuses of privileges were corrected; that a receivership of both was especially necessary to bring about a separation of their corporate properties and a re-establishment of them in their lawful positions. The decree of the court was in great detail and separate receivers were appointed for each company. The appointment for the Kansas Natural Gas Company was confined to the property of that company which was in Kansas, and the receivers were directed, in conjunction with the Attorney General of the state of Kansas, to appear in the District Court of the United States and urge the prior jurisdiction of the state court "over the subject-matter and the parties and the rights of the state of Kansas" and to petition a discharge of the receivers appointed at the instance of the bondholders and for the delivery of the property in Kansas to the receivers of the state court.

In accordance with the direction of the state court, its receivers of the Kansas Natural Gas Company and the Attorney General of the state appeared in the United States District Court and petitioned accordingly, with the result above mentioned.

Charles Blood Smith, of Topeka, Kan., and John F. Philips, of Kansas City, Mo. (Samuel Barnum, of Topeka, Kan., on the brief), for appellants.

John S. Dawson, Atty. Gen. of Kansas, Chester I. Long, of Wichita, Kan., and John H. Atwood, of Leavenworth, Kan. (T. S. Salathiel and O. P. Ergenbright, both of Independence, Kan., John Marshall, of Topeka, Kan., and Thomas Morrison, of Chanute, Kan., on the brief), for appellees.

Before HOOK and CARLAND, Circuit Judges, and VAN VALKENBURGH, District Judge.

HOOK, Circuit Judge (after stating the facts as above). The state of Kansas by its Attorney General began an action under the anti-trust laws of the state and in quo warranto against the Kansas Natural Gas Company and others in the district court of Montgomery county, Kan. It was charged in the body of the petition that the appointment of a receiver of that company was necessary for the correction of the wrongs complained of. The appointment of a receiver was also asked in the prayer for relief. The action was tried, and while held under advisement by the state court suits against the Kansas Natural Gas Company were commenced by and in the interest of its bondholders and other creditors in the federal court for the district of Kansas. The federal court appointed receivers who took possession. Thereafter the action in the state court was decided in favor of the state of Kansas, other receivers were appointed by that court and in conjunction with the Attorney General were directed to apply to the federal court for the surrender to them of the property located in Kansas. They did so and were successful. McKinney v. Kansas Natural Gas Co. (D. C.) 206 Fed. 772. The complainants in the federal court then prosecuted these appeals. The ultimate question for decision is: Which set of receivers has the superior right to possession?.

[1] It should be said at the outset that we cannot review the evidence before the state court. We can only consider the jurisdiction of that court, the nature of the action brought by the state of Kansas, the relief sought and granted, and the chronological relation of the proceedings there to those in the federal court. The claim of counsel for appellants that the evidence before the state court did not warrant its findings cannot be considered; the remedy is by state procedure, not here. Indeed, counsel say their motion for a new trial is still pending in the state court. For the purposes of this case we must therefore take it as true that the Kansas Natural Gas Company, a Delaware corporation which had obtained a license to do business in Kansas, combined with one or more Kansas corporations to restrict, restrain, and monopolize trade and commerce within the state contrary to its anti-trust laws, that it unlawfully acquired control and was holding and using the property and franchises of local corporations for the wrongful purposes; and that all of them were perverting and abusing the corporate powers and privileges granted them respectively by the state. The petition filed by the Attorney General so charged, and the state court so found from the evidence. Within the above limitations the contentions of appellants are substantially as follows: (1) The state court had not power or authority to appoint receivers in the case before it. (2) The commencement of the action in the state court did not give that court constructive possession of the property of the Kansas Natural Gas Company; the state court had acquired neither actual nor constructive possession when the federal court appointed receivers. (3) It is conceded that the Kansas Natural Gas Company was engaged in interstate commerce as well as in commerce wholly within the state of Kansas. By the Sherman Anti-Trust Act, Congress has prescribed a specific method for preventing restraints of interstate commerce, and the action of the state court conflicts with the paramount authority of Congress.

[2] "Jurisdiction is the right to put the wheels of justice in motion and to proceed to the final determination of a cause upon the pleadings and evidence." Illinois Central R. Co. v. Adams, 180 U. S. 28, 21 Sup. Ct. 251, 45 L. Ed. 410.

The merits as distinguished from jurisdiction relate to the duty of the court in a given case, and errors in respect thereof, whether by mistake of law or of fact, do not invalidate its action. Its action cannot be collaterally impeached, but stands everywhere until vacated according to the prescribed procedure. The jurisdictional character of a question is not determined by its importance. Thus, whether a suit in a federal court against a state official is a suit against the state contrary to the eleventh amendment is not jurisdictional, but relates to the merits. Scully v. Bird, 209 U. S. 481, 28 Sup. Ct. 597, 52 L. Ed. 899. And even where a statute says certain causes of action "shall not be enforced by any court," the prohibition may not go to the jurisdiction. Fauntleroy v. Lum, 210 U. S. 230, 28 Sup. Ct. 641, 52 L. Ed. 1039. The jurisdiction of the courts of a state is determined by its laws; and so of their procedure. District courts of the state of Kansas were established by the state Constitution to have such jurisdiction as might be provided by law. The statutes confer upon them as courts of original jurisdiction plenary cognizance "of all matters civil and criminal" except as otherwise provided. The grant is broad and sweeping. They have jurisdiction of actions in quo warranto (section 6276, G. S. 1909 [Code Civ. Proc. § 680]), and of actions to enforce the anti-trust laws, c. 81. The Code of Civil Procedure gives them specific authority to appoint receivers "after judgment to carry the judgment into effect" and to "dispose of the property according to the judgment," also in cases provided in the Code or by special statutes "when a corporation has been dissolved, or is insolvent or in imminent danger of insolvency, or has forfeited its corporate rights," also, "in all other cases where receivers have heretofore been appointed by the usages of courts of equity." Section 5860 (Code Civ. Proc. § 266). By section 1728 a corporation which is insolvent or perverts or abuses its corporate privileges may be dissolved by the district court on petition of the Attorney General; the court is authorized to appoint a receiver when the petition is filed or upon decree of dissolution to wind up the corporate affairs; if the court deems dissolution not necessary or advisable, it may appoint a receiver to manage the property until the abuses can be corrected. This section alone regarded probably applies only to domestic corporations, but section 1724 provides that any corporation of another state "authorized to do business in this state shall be subject to the same provisions, judicial control, restrictions and penalties, except as herein provided, as corporations organized under the laws of this state." This section shows a clear purpose to apply the remedies of section 1728 to foreign corporations so far as compatible with their corporate parentage. The phrase "judicial control" is especially significant.

But whatever may be the true construction of these sections, we think that upon general principles a district court of Kansas, possessed of both equitable and legal powers to be exercised as conditions require in a single action, has authority to appoint receivers in a cause like

that before the court of Montgomery county. A corporation which violates the anti-trust laws of the state is prohibited from doing business therein, and it is made the duty of the Attorney General to enforce the prohibition by injunction or other proceeding. Section 5146. Obviously, circumstances may be presented in which a receivership is an appropriate, even a necessary remedy, and in a case calling for its use a court of a state equipped with general equitable powers may employ such remedy against the property of a foreign corporation within its jurisdiction. As regards its business and property within a state, a foreign corporation is subject to the local law. In that respect it has no especial immunities not possessed by corporations of the state. Its corporate existence derived from another sovereignty may not be dissolved nor the internal workings of its purely corporate machinery controlled or regulated, but in its local activities it is subject to the local police laws and its property within the state to the ordinary processes of the local courts. If in violation of the laws of the state of Kansas in which such a corporation is doing business it combines with other corporations there, absorbs and commingles their property with its own, and uses it in maintaining a trust or monopoly, the local corporations thereby abandoning their franchises and public duties, a case arises in which a district court of Kansas may revoke the permit of the foreign corporation to do business in the state and dissolve the local corporations, or, short of such radical discipline, set them in their proper places, and may also take possession of the combined property for separation and allotment to the lawful owners. Without possession by the court its power to correct the violation of the law charged and found to have been committed would be fatally defective. The judge of the state court correctly observed that it was powerless to execute its decrees while possession was withheld. Yet both jurisdiction and remedy were conferred upon it by the state laws in most comprehensive terms. Aside from the specific provisions of the statutes relating to corporations, we think that, under the general powers of courts of equity which the Kansas court possessed and by analogy to the principles which obtain in cases of trusts and the marshaling of assets, receivers were properly appointed. That the right asserted by the state of Kansas was not as a direct beneficiary or a creditor, but was the expression of its public policy, does not make the case different in principle. · In one aspect the object of the action was to determine the ownership and enforce the distribution of specific property alleged to be unlawfully in the possession and control of a wrongdoer who was using it to violate the law.

[3] The action in the state court was begun first, but the federal court first appointed receivers. Did the subsequent appointment of receivers by the state court relate back so that it may be said that it was in constructive possession of the property from the time the action was commenced? It is a maxim of the law that a court having possession of property cannot be deprived thereof until its jurisdiction is surrendered or exhausted, and that no other court has a right to interfere. It is a principle of right and of law which leaves nothing to the discretion of another court and may not be varied to suit the convenience of litigants. Merritt v. American Steel Barge Co., 24 C.

C. A. 530, 79 Fed. 228. It is essential to the dignity and authority of every judicial tribunal and is especially valuable for the prevention of unseemly conflicts between federal courts and the courts of the states. As between them it is reciprocally operative—mutually protective and prohibitive. The most difficulty arises in determining when possession of property has been taken, when jurisdiction has attached to the exclusion or postponement of that of other courts. It is settled, however, that actual seizure or possession is not essential, but that jurisdiction may be acquired by acts which, according to established procedure, stand for dominion and in effect subject the property to judicial control. It may be by the mere commencement of an action the object, or one of the objects, of which is to control, affect, or direct its disposition. See Mound City Co. v. Castleman, 110 C. C. A. 55, 187 Fed. 921, and the cases cited. The principle often applies "where suits are brought to enforce liens against specific property, to marshal assets, administer trusts, or liquidate insolvent estates, and in suits of a similar nature where, in the progress of the litigation, the court may be compelled to assume the possession and control of the property to be affected." Farmers' Loan & Trust Co. v. Railroad, 177 U. S. 51, 20 Sup. Ct. 564, 44 L. Ed. 667. The mere fact that an exigency calling for a receiver may arise does not make the jurisdiction of the court in that respect relate to the beginning of the action (Shields v. Coleman, 157 U. S. 168, 178, 15 Sup. Ct. 570, 39 L. Ed. 660), as perhaps where it is an ordinary aid to execution on a final judgment and dependent upon conditions or circumstances that may or may not occur. But where the declared purpose of an action in whole or in part is directed to specific property, and the full accomplishment thereof may require judicial dominion and control, jurisdiction of the property attaches at the beginning of the action. And it is so if dominion and control are essential to the action, though not yet exercised. We think enough has been said of the nature of the action in the state court to show that it is within the principle invoked. Judicial dominion of the combined and commingled properties of the offending corporations is vitally necessary to the purposes of the action. In no other way could the marshaling and separation be effectually accomplished.

It is urged that the jurisdictions of the state and federal courts are not concurrent with respect to the subject-matters of the suits, but in questions like that before us the test is prior possession, actual or constructive, and not concurrency of jurisdiction. The subject-matter of which the one court has jurisdiction may be wholly without the power of the other. Prior possession by a court having jurisdiction of the case before it according to the laws of the sovereignty under which it was organized entitles it to hold until it is through.

[4] There remains for consideration the contention that, as applied to this case, the anti-trust statutes of the state conflict with the Sherman Act (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]), and hence must give way. In this connection it is unimportant that the Kansas Natural Gas Company is a Delaware corporation instead of a corporation of Kansas. The character of its trade and commerce, interstate or local, determines the applicability of the anti-

trust laws of the nation or state and not the origin of its corporate existence. The term "interstate corporation" is a convenient colloquialism but hardly accurate. In respect of the contention now being considered, the case would not be different had that company been organized under the laws of Kansas. Nor is it material that it transports some of the gas it deals in from Oklahoma into Kansas and from Kansas into Missouri by pipe lines. By express exemption it is not a common carrier subject to the Interstate Commerce Act (Act June 29, 1906, c. 3591 [U. S. Comp. St. Supp. 1911, p. 1284] 34 Stat. 584) § 1, even would it matter were it otherwise. The point urged by counsel rests on the fact that the company is engaged in both interstate and local commerce and upon the assertion that the two are so intricately interwoven as to be inseparable. The claim of inseparable intricacy is not tenable. The two kinds of commerce are no more interinvolved than with most railroads of the country and many manufacturing and mercantile concerns. Whatever may be the origin and admixture of the commodity dealt in or the common use of the same plant, equipment, and instrumentalities, the two kinds of commerce are distinguishable. The company is in no better position than if it were an ordinary industrial and mercantile concern of Kansas producing, buying, shipping, and selling, locally and in other states, grains, oils, or other commodities which lose their particular identity in the mass of that which is dealt in. Again, the property and business of the company which are wholly within the state of Kansas are not negligible incidents to which the state antitrust statutes are being forced; much of its property including that obtained from the other corporations is located there and much of its business is there transacted. The action of the state of Kansas was directed to the violation of the state statutes. The decree of the state court was expressly confined to the matters within its jurisdiction and subject to the local laws. There was no attempt to enforce the Sherman Act.

The contention therefore reduces itself substantially to this: A corporation in a state engaged in both interstate and local commerce which violates the Sherman Act and also the state statutes against trusts and monopolies is not subject to prosecution or action for the latter in a local court, but the remedy is under the Sherman Act in the courts of the United States; also, it is not competent for a state court in an action brought to enforce the state statutes to take possession, by receivers, of the physical property and instrumentalities employed by a defendant in interstate commerce. We think that neither phase of the proposition is tenable. The supremacy of the laws of the United States is not confined to those enacted pursuant to the commerce clause of the Constitution, but extends with equal force and potency to all the subjects committed to Congress. In this respect there is nothing peculiar or exceptional in that subject of national jurisdiction. Legislation by Congress does not necessarily exclude or displace legislation of the states upon those aspects of a subject which are of local or state concern. For example, it is the settled law that the same act or series of acts may constitute a violation of the separate laws of both nation and state, and that the offender may be prosecuted and punished in

each jurisdiction. Cross v. North Carolina, 132 U. S. 131, 139, 10 Sup. Ct. 47, 33 L. Ed. 287; United States v. Cruikshank, 92 U. S. 542, 550, 23 L. Ed. 588; Fox v. Ohio, 5 How. 410, 433, 12 L. Ed. 213. See Grafton v. United States, 206 U. S. 333, 27 Sup. Ct. 749, 51 L. Ed. 1084, 11 Ann. Cas. 640. It is no defense to a prosecution for a violation of the anti-trust laws of a state that the accused by the same general course of conduct has also violated the similar laws of the United States, or, indeed, has been punished therefor. The same reasoning applies when, as here, the proceeding is a civil action to enforce obedience to the law. In the Addyston Pipe Case, 175 U. S. 211, 247, 20 Sup. Ct. 96, 109 (44 L. Ed. 136), which was brought under the Sherman Act, the decree below was modified because it covered both interstate and local commerce and was therefore too broad. The court said:

"Although the jurisdiction of Congress over commerce among the states is full and complete, it is not questioned that it has none over that which is wholly within a state, and therefore none over combinations or agreements so far as they relate to a restraint of such trade or commerce. It does not acquire any jurisdiction over that part of a combination or agreement which relates to commerce wholly within a state, by reason of the fact that the combination also covers and regulates commerce which is interstate. The latter it can regulate, while the former is subject alone to the jurisdiction of the state."

The Kansas anti-trust statutes are a bona fide exercise of the police power of the state and not an attempt under the guise thereof to regulate or burden interstate commerce. Their effect upon that commerce is at the most incidental and collateral.

But it is objected that the state court of Montgomery county proposes to seize by its receivers the very property and instrumentalities which the owners employ in interstate commerce. That is frequently done in private litigation, the suits of the appellants in the federal court being instances, and it has never been held that a state in the enforcement of its valid laws by judicial proceedings is more restricted than the individual or the corporation. The power of Congress over interstate commerce is supreme, but the right to engage in such commerce is not a general sanctuary or refuge, nor does the use of commodities and instrumentalities therein exempt them from the ordinary local laws applicable to the mass of property in the state of which they are a part. They may be taxed as other property (Henderson Bridge Co. v. Kentucky, 166 U. S. 150, 17 Sup. Ct. 532, 41 L. Ed. 953), even while in the course of interstate commerce but temporarily at rest for business convenience or advantage (General Oil Co. v. Crain, 209 U. S. 211, 28 Sup. Ct 475, 52 L. Ed. 754), also sold for the nonpayment of taxes. They may be appropriated under the power of eminent domain. They are subject to attachment and garnishment (Davis v. Railway, 217 U. S. 157, 30 Sup. Ct. 463, 54 L. Ed. 708, 27 L. R. A. [N. S.] 823, 18 Ann. Cas. 907), and to seizure and sale on execution like any other property. A domestic corporation engaged in interstate commerce may be dissolved by the state for abuse of its corporate powers and its property sold and the proceeds distributed among its creditors and stockholders to the destruction of its commerce of every kind. The license of a foreign corporation engaged in interstate and local com-

merce to do business within a state may be canceled, it may be adjudged guilty of violating the anti-trust laws of the state and to pay a fine therefor, and a receiver of all its property in the state may be appointed under the general laws as an aid to the enforcement of the judgment. Waters-Pierce Oil Co. v. Texas, 212 U. S. 86, 112, 29 Sup. Ct. 220, 53 L. Ed. 417; Palmer v. Texas, 212 U. S. 118, 29 Sup. Ct. 230, 53 L. Ed. 435. In Louisville & Nashville Railroad v. Kentucky, 161 U. S. 677, 701, 16 Sup. Ct. 714, 40 L. Ed. 849, an injunction against the consolidation of competing lines of railroad was upheld over the objection of an interference with interstate commerce. The court said:

"It has never been supposed that the dominant power of Congress over interstate commerce took from the states the power of legislation with respect to the instruments of such commerce, so far as the legislation was within its ordinary police powers."

And we add that when a foreign corporation combines with corporations of a state contrary to the public corporate duties of the latter and in violation of the statutes of the state against trusts and monopolies, and takes possession of and intermingles their property with its own, the state may by and according to the established processes of its courts take possession of the whole to make effective a decree of dissolution, segregation, and appropriate restoration, notwithstanding the combined property is employed by such corporation in interstate commerce as well as in commerce within the state.

The decree is affirmed.