### LOUISVILLE TRUST CO. v. KNOTT et al.

(Circuit Court of Appeals, Sixth Circuit. June 27, 1904.)

No. 1,290.

1. FEDERAL AND STATE COURTS—CONFLICTING JURISDICTION—PROPERTY IN CUSTODIA LEGIS.

A corporation's franchise having expired by limitation, and its assets having been delivered to a trust company appointed as liquidator of its affairs, minority stockholders filed a bill in the state court for an inspection of its books, the ascertainment of its debts and liabilities, together with a sale and distribution of its assets, and other equitable relief. The corporation and its majority stockholders appeared in such suit, and pending a motion therein for an inspection of the books a creditor of the corporation obtained a collusive judgment in the federal court by confes-

sion, and obtained the return of an execution unsatisfied, and immediately filed a creditors' bill for the appointment of a receiver in the federal court, who, when appointed, took possession of the assets, which the federal court refused to surrender to a receiver subsequently appointed by the state court. *Held*, that the state court had first acquired jurisdiction of the subject-matter of the administration of such corporation's assets, though it had not first taken physical control thereof, and hence was entitled to their surrender by the receiver of the federal court.

**2. SAME—DIVERSE CITIZENSHIP.**

The fact that the plaintiff in a suit in the federal court, by reason of diverse citizenship, was entitled to sue therein for the establishment of his claim, did not entitle him to have the assets of the corporation administered in such court, since it would be presumed that full recognition would be accorded to his judgment by the state court.

Appeal from the Circuit Court of the United States for the Western District of Kentucky.

For opinion below, see 124 Fed. 342.

The Evening Post Company, one of the appellees above named, was organized as a corporation under the laws of Kentucky with a capital stock of $60,000, divided into 600 shares, and began its corporate life on May 1, 1878. By the terms of its charter the duration of its existence was limited to the period of 25 years, and terminated May 1, 1903. The Kentucky Statutes, 1903. § 561, however, provided that "when any corporation expires by the terms of the articles of incorporation, or by the voluntary act of its stockholders, it may thereafter continue to act for the purpose of closing up its business, but for no other purpose; and it shall be the duty of the officers to settle up its affairs and business as speedily as possible; and they shall cause notice to be published, for at least once a week for four consecutive weeks, in some newspaper printed and published in the county, if any, of the fact that it is closing up its business; and all debts and demands against the corporation shall be paid in full before the officers receive anything." On April 30, 1903, there was a meeting of all the officers and stockholders of the company, at which, against the objection and protest of the representatives of the Haldeman estate, who owned 48 shares, of $100 each, the following resolutions were passed:

"Be it resolved:

"(1) That the Columbia Finance & Trust Company be, and it is hereby appointed, liquidator of the affairs of the corporation, with directions to operate for the use of the stockholders the affairs and business of said corporation as they have been operated, until the property can be properly advertised and sold, and the possession thereof delivered to the purchaser.

"(2) That prior to the said sale liquidator shall cause to be made for the use of the stockholders a comprehensive statement of the assets and liabilities of the corporation, and furnish each stockholder with a copy of said statement.

"(3) That the said liquidator shall in its advertisements specify the nature of the articles to be sold, and shall make such sale for cash to be paid on the delivery of possession, and shall require of the purchaser that he deposit a certified check for an amount equal to one-third of the total purchase price, which the liquidator shall hold and credit upon the purchase price when the sale is consummated, or if for any reason it shall be set aside, return to the bidder. If said bidder to whom the property is knocked down shall fail at once to deliver to the liquidator the certified check as herein provided, the liquidator shall immediately resell the property and refuse to receive bids from said former bidder.

"(4) Said liquidator may, in his discretion, employ an auctioneer or other agents necessary or proper to be used in the sale of the property.

---

¶ 2. Diverse citizenship as a ground of federal jurisdiction, see notes to Snipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.

"(5) Until said sale, and during the operation of said property, said liquidator is given full authority and permission to employ such agents and persons as may be necessary to properly, conveniently and economically operate the company, and keep an account of all its expenses and take vouchers therefor. And after the property has been fully administered it shall make out a comprehensive account of its actings and doings, and shall furnish a copy thereof to each of the stockholders.

"(6) The said liquidator shall, from the proceeds of the sale of the property, pay all the debts of the corporation, and the balance, if any, shall be distributed among the stockholders according to their legal rights."

On the same day the Columbia Finance & Trust Company accepted the appointment, and entered upon the discharge of the duties thereof. Shortly before this, and on April 25, 1903, the representatives of the Haldeman estate, as stockholders therein, made application to the Evening Post Company to be allowed to inspect the books and records of the company for the purpose, as they claimed, of enabling them to determine what course they should pursue in relation to its affairs. This application was refused. It was renewed after the appointment of the Columbia Finance & Trust Company, and again refused by the latter, but with the statement by it that in a short time it would make out an exhibit of the assets and liabilities of the corporation, a copy of which would be furnished to each stockholder. But this did not satisfy the applicants, and they demanded the inspection of the books themselves, which was refused them.

On May 12, 1903, those stockholders filed their bill of complaint in the circuit court for Jefferson county, Ky., against the Evening Post Company, the Columbia Finance & Trust Company, Richard W. Knott, J. M. Atherton, John R. Knott, Eugene Q. Knott, and Laura G. Boyle, stating the organization of the Evening Post Company, the limitation of its existence, its capital stock, their ownership of the 48 shares thereof, and the ownership of the rest of it by the individual defendants above named; that the individual defendants had for a long time been managing the affairs of the company in their own interests, without any meeting of stockholders or election of directors; their demands and the refusals to be allowed inspection of the books above stated; the meeting of the stockholders and the passage of the resolutions on April 30, 1903; that the complainants did not know what was the indebtedness of the Evening Post Company, or to whom it was owing, or how secured, nor what assets the company owned; that the defendants were still operating the business of the company at great loss and expense; that the individual defendants were converting to their own use the entire assets of the company, including its good will; that the limitation of the indebtedness which the company might incur was $40,000, but that the defendants were claiming that they themselves were its creditors to the extent of $109,000; and that an inspection of the company's books was necessary to ascertain the real state of the company's business. The prayer of the bill was that the affairs of the Evening Post Company be wound up and liquidated; that an inspection of the books be ordered and allowed; that the defendants who are the creditors of the company be required to prove their accounts; that a reference be ordered to ascertain the debts and liabilities of the company, and that its assets be sold, and the proceeds distributed to the parties entitled thereto according to their interests; that the court shall determine whether the business of the company shall be continued pending the suit; and for all proper equitable relief. Process was issued and served on all the defendants. Then, on May 19, 1903, the complainants in that suit moved for an order requiring the defendants to permit them to have access to the books, records, and documents of the company, to enable them to inspect the same. Hearing on this motion was assigned to May 23, 1903. The defendants appeared and opposed the granting of the motion. The hearing was not completed on that day, and was postponed to May 25th, and again to May 30th, when the hearing was completed. On June 4th the court filed its opinion granting the motion. The defendants on May 23, 1903, filed their answer to the bill. While the motion for the production of the books was pending, and on May 26, 1903, Stuart R. Knott claiming to be a creditor of the Evening Post Company in the sum of $6,000, brought suit against it in the Circuit Court of the United States, and

on the same day, by consent of the company, obtained a judgment for that sum, with interest. On the day following he took out an execution, which was immediately returned nulla bona. Thereupon he filed a creditors' bill in that court, making the Evening Post Company, the Columbia Finance & Trust Company, and other parties, stockholders and creditors, who were also defendants in the case in the state court, defendants. This bill was filed in behalf not only of the complainant therein, but of all other persons similarly interested, and who were creditors of the Evening Post Company. It prayed, among other things, that a receiver might be appointed, and that he be directed to take into his possession and control all the property of the Evening Post Company, its books of account, its records, its circulation lists, and everything else pertaining to its business; that all the property of the company, including its good will, should be sold; that the court determine the means by which the publication of the Evening Post should continue pending the suit; that the debts of the company and their rank be ascertained; and that its property be sold, and the proceeds brought into court for distribution among its creditors. On the day of the filing of this bill, the complainant made a motion for the appointment of a receiver, and the court entered the following order:

"Pending the hearing of said motion, it is ordered by the court that the said Columbia Finance & Trust Company be, and it is, restrained from disposing of any part of said property, and from delivering possession of any part thereof to any person or officer, otherwise than in such manner as may be approved by this court."

All the defendants filed answers consenting to the appointment of a receiver, and on the next day, May 28th, the court appointed L. C. Humphrey, one of the appellees, receiver, who immediately took possession of the property of the company, including its books and papers. Subsequent to these proceedings in the Circuit Court of the United States, and on June 27, 1903, the state court, on motion of the complainants in the suit there pending, appointed the Louisville Trust Company receiver, and directed it to take possession and charge of the entire estate of the Evening Post Company. It having already been taken into the possession of the receiver of the United States court, the state court directed its receiver to apply to the United States court by petition asking that the assets, books, and papers of said company be surrendered to the receiver of the state court. The Circuit Court of the United States allowed the petition to be filed, but refused to grant it. From the order refusing the petition, the receiver of the state court has appealed.

John L. Dodd and David W. Baird, for appellant.

Alexander Pope Humphrey and James P. Helm, for appellees.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge, having stated the case as above, delivered the opinion of the court.

The ground on which the Circuit Court refused the petition of the receiver of the state court for the surrender to him of the assets of the Evening Post Company was that the state court had not the possession or control of the property of the company at the time when the receiver of the Circuit Court of the United States took possession thereof under the order of the latter court. The learned judge conceded what has so often been decided—that, the suit in the state court having been first commenced, if that court had taken actual possession of the property, it could not lawfully have been dispossessed by the order of the federal court. It is unnecessary to fortify the ground conceded. It has long since ceased to be debatable. The question is whether, upon the facts as they were presented to the court below, it was essential that the state court should have actually exercised its dominion over the property, in order to render the seizure thereof by

the federal court unlawful. And we think it was not essential. The reasons which support the doctrine of the conceded rule are not all the same as those which apply to the question here, but those here applicable are equally potent and persuasive to establish a similar rule for judicial action, when the power of the court over the assets has not yet been exercised, but the right to do so is essential to the objects of the suit. The corporate life of the Evening Post Company had ended for all purposes except for winding up its affairs, and it had become subject to the statutory regulations prescribed for closing up its business and disposing of its assets. A majority of its stockholders were pursuing a course of conduct with reference to the assets which, as the minority contended, was intended to further the private interests of those in the majority, was not authorized by the statute, and was in derogation of the rights of the minority. The latter filed their bill in the state court to prevent this, and to obtain a proper settlement of the company's affairs, and the court entertained it. The contention of the appellees that the bill presented only a controversy over the question of right to inspect the books of the company is not tenable. That was a mere incident. The averments of the bill were ample to present a case for the settlement of the affairs of the company and the disposition of its assets, and this was the general relief prayed. The company and the majority stockholders were made defendants, and they appeared and submitted to the jurisdiction of the state court. While a motion was pending in that case, and before a judgment thereon was rendered, a collusive judgment in the federal court was accorded to a creditor against the company by the majority who were in control of its affairs. A creditors' bill was immediately filed, the object of which was much the same as that of the suit in the state court, a receiver was appointed, and the property seized into his possession. When the state court came to decide the pending motion, which was for the production of the books and records, it found itself deprived of all power to make any effective order or decree in the case. The subject-matter of the suit, the res which its jurisdiction had been invoked to administer, and which it had undertaken to administer, had been removed by another court of co-ordinate jurisdiction and taken under its own control for administration in a suit brought subsequently for that purpose. Any decree of the state court made for the purpose of effecting the objects of the suit would be mere brutum fulmen, to use the language of Mr. Justice Grier in Orton v. Smith, infra, in describing such a situation. It is clear that such a result is not only contrary to the purpose and spirit of any orderly system of jurisprudence, but is one extremely likely to provoke a conflict, tending to discord and mischief. To avoid such conflict, most liable to arise between the federal and state courts, it has come to be settled, as we think, that, wherever a state or federal court has lawfully taken jurisdiction of a case for the purpose of subjecting assets within its territory to the charge or disposition which the law applicable to the case requires, such assets are thereby brought in custodia legis, subject to the power and control of the court, and that no other court of co-ordinate jurisdiction can, in a suit commenced while the assets are in that situation, lawfully deprive the court, which has already acquired the right of control, of the pos-

session of them. This because the possession of the res is indispensable to the exercise of its jurisdiction by the court to the end that it may be impressed by its decree. It does not seem to us important that a receiver had not actually been appointed. An appointment of a receiver would rest upon considerations of convenience, and might be made at any time during the progress of the case if occasion should arise. The conversion of the assets might be made without the employment of a receiver at all. Besides, the appointment goes upon the ground that the court has acquired control of the assets. He is a mere agent of the court. The possession is that of the court, and not his own. It is quite true that in many cases the rule has been stated in terms no broader than to include an actual possession by the court consequent upon a seizure. But it is seen that generally in such cases the exigency did not make it necessary to go beyond that limit. When the question we are now considering has been actually presented, the decisions have been quite uniformly in accord with the rule which we have indicated as the correct one. Wallace v. McConnell, 13 Pet. 136, 10 L. Ed. 95; Orton v. Smith, 18 How. 263, 15 L. Ed. 393; Chittenden v. Brewster, 2 Wall. 191, 17 L. Ed. 839; Riggs v. Johnson County, 6 Wall. 166, 18 L. Ed. 768; Farmers' Loan, etc., Co. v. Lake St. R. Co., 177 U. S. 51, 20 Sup. Ct. 564, 44 L. Ed. 667, where Mr. Justice Shiras, expressing the opinion of the court upon this subject, said:

"Nor is this rule restricted in its application to cases where property has been actually seized under judicial process before a second suit is instituted in another court, but it often applies as well where suits are brought to enforce liens against specific property, to marshal assets, administer trusts, or liquidate insolvent estates, and in suits of a similar nature, where, in the progress of the litigation, the court may be compelled to assume the possession and control of the property to be affected. The rule has been declared to be of especial importance in its application to federal and state courts."

This subject has been much discussed in two cases in this circuit, which are canvassed in the briefs of counsel here (Powers v. Blue Grass Building & Loan Association [C. C.] 86 Fed. 705, and Phelps v. Mutual Reserve Fund Life Association, 112 Fed. 453, 50 C. C. A. 339, 61 L. R. A. 717), in both of which cases Judge Lurton delivered the opinion, in the first at the circuit, and in the latter for this court. The facts in neither of these cases presented the very question we now have before us, for in the Powers Case the state court was acting as an adviser of an assignee, and was not proceeding for the purpose of affording relief to a plaintiff. The assignee was not an officer of the court, and the possession of the res by the court was not necessary to the object of the application. It was held there was no impediment to the proceeding which the Circuit Court of the United States proposed to take with reference to the assigned property. In the Phelps Case a receiver had actually been appointed by the state court in proceedings supplementary to the judgment, and for the satisfaction thereof. The order appointing the receiver impounded the debts due to the association, and directed him to collect them. Upon a bill in equity filed in the United States Circuit Court, denying the jurisdiction of the state court to render the judgment mentioned or to appoint the receiver, the federal court granted an injunction restraining the

plaintiff and the receiver in the state court from executing the order of the latter for the impounding and collection of the assets of the association. Finding, as we did, that the state court did not lack jurisdiction, we held that this action of the federal court was an unlawful interference with the right and power of the state court. The difference between the Phelps Case and this is that in the former the state court had taken action toward the appropriation of the assets to the object of the suit by seizure, while in the present case that step had not yet been taken. In both of the cited cases the doctrine is announced in terms broad enough to cover a case where actual possession may not have been taken by the court which first acquired jurisdiction.

The following cases in other Circuit Courts of Appeals are directly in point: Merritt v. American Steel Barge Co., 79 Fed. 228, 24 C. C. A. 530, 49 U. S. App. 85; Adams v. Mercantile Trust Co., 66 Fed. 617, 15 C. C. A. 1, 30 U. S. App. 204; Zimmerman v. So Relle, 80 Fed. 417, 25 C. C. A. 518; Memphis Sav. Bank v. Houchens, 115 Fed. 110, 52 C. C. A. 176; Baltimore & O. R. Co. v. Wabash R. Co., 119 Fed. 678, 57 C. C. A. 322, certiorari denied 187 U. S. 650, 23 Sup. Ct. 848, 47 L. Ed. 349. And see 2 Bates, Fed. Procedure, § 613.

In harmony with it, and designed to give it full operation, is another rule, which is that whenever in such case a third party claims some interest in the property which has been subjected to the control of the court, he may intervene in the pending case, and become a party thereto, for the protection of his interest, as explained in Krippendorf v. Hyde, 110 U. S. 276, 4 Sup. Ct. 27, 28 L. Ed. 145; Gumbel v. Pitken, 124 U. S. 143, 5 Sup. Ct. 616, 28 L. Ed. 1128, and numerous other cases of like character decided by the Supreme Court, or, if that interest be such that it survives the exercise of the jurisdiction in the pending case, he may stand aloof and pursue his remedies after the property has been discharged by the court which has had it under its control. We are not now concerned with suits in personam, in regard to which other reasons may prevail to a different result. The case of Moran v. Sturges, 154 U. S. 256, 14 Sup. Ct. 1019, 38 L. Ed. 981, though at first blush it might seem to the contrary, is not in conflict with the current of modern decisions. In that case the claim of the plaintiff was of a maritime nature, of which the federal court alone had jurisdiction. The state court did not have power to deal with it. The two courts were not of concurrent jurisdiction. The plaintiff could not by intervention confer upon the state court a jurisdiction which it did not by law possess. The authority of the federal court was paramount and exclusive.

It does not matter that the plaintiff in the present case was not a party to the case in the state court, or that by reason of his citizenship he had a constitutional right to bring his suit in the federal court. Perhaps he might have maintained it there for the purpose of establishing his claim. He could then go into the state court which had the control of the assets of his debtor, and secure the recognition of his right thus established. Byers v. McAuley, 149 U. S. 608, 13 Sup. Ct. 906, 37 L. Ed. 867. The presumption must be that such recognition would be given by the state court, and his lawful rights duly accorded to him. It is not even charged in his bill that any one is

attempting to defraud the plaintiff, or is proceeding without right, or to the prejudice of any right of the plaintiff; and, on the whole record, we see no other hindrance to the plaintiff by the suit in the state court than such as is ordinarily incident to legal proceedings.

The state court took the proper course when it directed its receiver to apply to the court below for the surrender to it of the assets of the company, and we think there was error in refusing the application when the facts were made known to the latter court.

The order appealed from must be reversed, with costs, and the cause remanded, with a direction to grant the petition of the receiver of the circuit court for Jefferson county.