STIRLING et al. v. SEATTLE, R. & S. RY. CO.

(District Court, W. D. Washington, N. D. August 22, 1912.)

No. 2,158.

COURTS (§ 492*)—FEDERAL AND STATE COURTS—PRIORITY OF JURISDICTION.

A suit in a state court by a stockholder against the corporation and others, in which complainant alleged a conspiracy to wreck the corporation and obtain its property, that pursuant thereto, through the fraud of trustees, its income was diverted and its insolvency brought about, and praying for the appointment of a receiver to conserve its property until it could be freed from illegal claims and restored to the corporation, and a subsequent suit in a federal court by the trustees and beneficiaries named as defendants in the first suit to have the corporation adjudged insolvent and praying for a receiver to wind up its affairs, so far involve the same subject-matter and property that the state court, which appointed a receiver, acquired exclusive jurisdiction which it was entitled to retain until it had finally determined the controversy before it, and such jurisdiction was not lost by an appeal from the order appointing the receiver and the giving of a supersedeas bond which under the law of the state merely suspended the order.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1345; Dec. Dig. § 492.*

Conflict of jurisdiction of federal court with state courts, see note to Louisville Trust Co. v. City of Cincinnati, 22 C. C. A. 356.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Equity. Suit by William R. Stirling, Alexander Smith, Augustus S. Peabody, James L. Houghteling, Jr., and Burton Thomas, copartners under the firm name of Peabody, Houghteling & Co., against the Seattle, Renton & Southern Railway Company. On petition of William R. Crawford, challenging the jurisdiction of the court and for the discharge of receiver. Petition sustained.

C. G. Little and Walter S. Fulton, for complainants.
Kerr & McCord, for defendant.

CUSHMAN, District Judge. This suit was brought by certain bondholders and creditors of the defendant, alleging the insolvency of the defendant and praying for the appointment of a receiver to take charge of all of the defendant's property, the ascertainment of claims against the estate for the sale of the property, the payment of the claims, and for general relief.

Upon the same day that the complaint was filed the defendant answered, admitting the allegations of the complaint, and a receiver was thereupon appointed. Thereafter one William R. Crawford, a stockholder of the defendant, asked leave to file a petition and affidavit, purporting to show lack of jurisdiction in this court. The request was denied. Petitioner applied for a writ of mandate in the Court of Appeals of the Ninth Circuit, upon the hearing of which that court ordered the filing in this court of said petition, directing that it be considered and determined.

The petition alleges want of jurisdiction in that, at the time of the commencement of the suit in this court, there was another action pending in the superior court of the state of Washington between the same parties, concerning the same subject-matter, and for the same relief.

The plaintiffs herein answered the petition, admitting the pendency of the action in the state court, but denying that it was similar to the suit in this, either as to parties, subject-matter, or relief sought.

The issue thus made was tried upon affidavits and court records, which show that the suit pending in the state court, which it is claimed ousted the jurisdiction of this, is between William R. Crawford, plaintiff, and the Seattle, Renton & Southern Railway Company, a Washington corporation, William R. Stirling, Augustus Peabody, Alexander Smith, James L. Houghteling, Jr., copartners doing business under the style and firm name of Peabody, Houghteling & Co., Augustus S. Peabody and First Trust & Savings Bank of Chicago, Ill., an Illinois corporation, trustees, and Augustus S. Peabody, trustee, defendants, thus including all the parties to the present suit as defendants therein, together with certain trustees.

The complaint states the incurring of the debts by the railway company, made the basis of plaintiffs' suit herein. That the security for these obligations were held by certain trustees for the benefit of Peabody, Houghteling & Co. That the defendant Peabody, Houghteling & Co. wrongfully refused to purchase certain of the railway company's bonds covered by said security which they had therein agreed

to buy. That thereby the defendant railway company was forced to issue notes to the defendant Peabody, Houghteling & Co., secured by all the stock of its stockholders, save five shares, which were withheld to qualify its trustees.

They were further compelled to give an option on all the stock, retire the board of trustees and put in their place agents of Peabody, Houghteling & Co.; that the defendant railway company was further compelled to pledge its net income to be forwarded each month to the Peabody, Houghteling & Co. in Chicago, the fund thereby created to be used for the sole purpose of paying the interest on the bonds and notes owing said firm.

That, at this time, there were pending certain suits in the state court for the reduction of fares on the line of the defendant railway company, which, if successful, would render it unable to pay the interest on its bonds and notes. That the defendant Peabody, Houghteling & Co. agreed to defend these suits and, if necessary, bring and prosecute a suit in this court to prevent this reduction.

That, during the term of the option on the stock, the defendant Peabody, Houghteling & Co. demanded and took over the entire property of the railway company and thereafter exercised complete control of it, claiming full authority to direct its affairs, without reference to the board of trustees, taking upon themselves all corporate powers.

That, from the time said firm took control of the railway company, they failed and refused to set aside the net income, as agreed, for the payment of the interest on the bonds and notes. That ever since that firm has refused to proceed, as agreed, with the suits to prevent the reduction of its fares, and has prevented the railway company from so proceeding; has refused to fix a tariff, as provided by law, that would pay the expenses of operation and interest on the debt.

That in April, 1912, the said firm notified the plaintiff in that suit, William R. Crawford, that the railway company had no money to pay the semiannual interest falling due May 1st. That this was the first that such plaintiff knew that the net income and other money, the proceeds of the sale of the notes remaining in the hands of said firm, had not been set aside for that purpose, as agreed. That, four days later, the annual stockholders' meeting of the railroad company, provided by law, was to be held. That at such meeting the president of the railway company, the agent of the said firm, acting at its instance and under its direction, adjourned the meeting until June 12th, refusing to disclose the condition of the company and forestalling any consideration of its affairs or ways and means to provide for the payment of such interest, and thereafter refused to call any stockholders' meeting for that purpose.

That all this was done by the defendant firm and its agents to procure default in the payment of the interest due May 1st, to render valueless the period of grace allowed after default, under the terms of the agreement of the parties, and to obtain the stock of the company and its property.

That, in violation of the trust deed securing the bonds, the defendant firm, in the furtherance of this conspiracy, had caused its agent, the president of the railway company, to issue to them demand notes in large amounts.

That a large amount of permanent improvements had been made to said railway company's property by said firm and unnecessary equipment bought, in order to dissipate its income and money on hand, thus insuring default in the payment of the interest to them, and that they might become the owners of the railway company's stock and its property.

The plaintiff, with other relief, prayed for an accounting between the defendant railway company and the defendant Peabody, Houghteling & Co., and Peabody, trustee; that all money expended in unnecessary betterments and maintenance be charged to said firm; that said firm be compelled to pay the semiannual interest on the bonds and notes, thereby preventing a default; that a default and forfeiture on account of a failure to pay this interest be enjoined; that the board of trustees of the defendant railway company be adjudged the possession and control of its property; that the defendant Peabody, Houghteling & Co., and Peabody, trustee, be decreed usurpers, having no right to its management, control, or property; that a receiver be appointed to take possession and management of the railway company's property, its books, papers, and files, and to be vested with all the authority usually vested in like cases, the receiver not to allow or permit any of the records or books of the company to be changed or taken from his possession, or permit said firm, or any of its agents, to cancel, transfer, or reissue any stock on the books of the company, to preserve, during the receivership, the status quo of said property and effects, to conserve and preserve, during the receivership, the property and assets of the defendant railway company, and for general equitable relief.

The petition challenging the court's jurisdiction showed that, subsequent to the filing of this bill of complaint, in the state court, there was filed, in the same suit, a supplemental bill of complaint, alleging the failure of the defendant railway to pay a number of plaintiff's debts therein enumerated; that for a long time prior to May 1, 1912, that company had been in imminent danger of insolvency; that ever since May 1, 1912, it had been insolvent. The supplemental complaint prayed for the appointment of a permanent receiver.

The evidence shows the following proceedings in the state court. upon the complaint therein, prior to the filing of a bill of complaint in the suit in this court:

An order appointing a temporary receiver, with an order directed to the defendant railway company to show cause why a permanent receiver should not be appointed, which receiver thereafter qualified and took possession of the defendant railway company's property.

The appearance by the railway company, asking the transfer of the cause to another judge of the same court and an order granting the same.

The filing of a number of affidavits on the part of the plaintiff and the defendant railway company on the question of the continuance of the receivership.

An order made, discharging the temporary receiver on May 8, 1912. An order denying the appointment of a permanent receiver on the same day and the filing of a supplemental complaint by the plaintiff, alleging that the defendant railway company was in imminent danger of insolvency prior to May 1st, and that it had been insolvent ever since that date.

May 10th. A nunc pro tunc order, as of May 8th, denying the appointment of a permanent receiver upon the complaint and supplemental complaint.

May 13th. An affidavit for the publication of summons, directed to the nonresident defendants; that is, all of the defendants other than the defendant railway company.

On the next day, May 14th, the present suit was begun in this court, which is now sought to be dismissed, and a receiver was appointed on the same day. as above stated.

Subsequently, on the 17th day of May, in said suit in the state court, a receiver was appointed.

On the 20th of May, a notice of appeal to the Supreme Court of the state was given by the defendant railway company, and a supersedeas bond was given, superseding the order appointing said receiver.

On May 21st, an order of final discharge of the temporary receiver first appointed.

On May 22d, the filing of notice of appeal by the plaintiff from the orders made on May 8th, refusing to appoint a receiver, and the filing of a bond by the plaintiff on the same day.

The filing by the defendant firm, Peabody, Houghteling & Co., Augustus S. Peabody, First Trust & Savings Bank, trustees, and Augustus S. Peabody, trustee, of a petition for removal to this court.

The receivers appointed in this court still retain the control and management of the property of the defendant railway company, which property is located in King county, state of Washington, and over which the state court had jurisdiction. The suit in the state court is still pending and undetermined.

The foregoing statement shows that the action in the state court was a stockholders' suit, complaining of conspiracies, frauds, wrongs, and breaches of trust upon the part of certain trustees and beneficiaries under the trusts, in which the corporation was being used as an instrument for its own destruction: alleging that the defendants were seeking to deprive the defendant railway company of its property and the stockholders of their stock, and in which it was sought to have the trustees removed, the property of the corporation taken from them and returned to the corporation; that defendants be required to discharge, in certain particulars, their trust, that is specific performance; that the corporate title be quieted against certain asserted claims of the defendants; that a receiver be appointed to take over the property and conserve and administer it, all under the direction of the court pending the return of the property to the corpora-

tion and for the appointment of a receiver under the state statute, on account of its insolvency, which statute provides:

"A receiver may be appointed by the court in the following cases: * * *' (5) When a corporation has been dissolved or is insolvent, or is in imminent danger of insolvency, or has forfeited its corporate rights." Section 575, Pierce's Code (Rem. & Bal. Code, § 741).

An appeal may be taken to the Supreme Court of the state "from any order appointing or removing, or refusing to appoint or remove, a receiver." Section 1048, Pierce's Code (section 1716, Rem. & Bal. Code).

The suit in this court is a creditor's bill, praying the appointment of a receiver and the winding up of the corporate affairs. It is contended by the plaintiff herein that the suit in the state court is neither similar as to parties, subject-matter, or relief sought; that "all of the allegations of the complaint" (in the state court), "as well as the prayer for relief, indicate that the purpose was not to wind up the corporation, but change the personnel of the board of trustees and perpetuate the corporation. The action in the federal court is to destroy the corporation. The action in the state court is to continue it in existence as a going concern. The two actions are wholly and entirely different, separate, and distinct."

If it be alleged in one court or suit that, for certain reasons, a corporation should be destroyed, and answer is made that, for certain other reasons, it should not be destroyed, and if in another court suit is brought and this question is turned about, it being alleged that, on account of the reasons last mentioned, the corporation should be preserved, its destruction prevented, and it be answered thereto that, on account of the reasons first mentioned, it should not be preserved, but destroyed, it is not perceived but that the relief sought and the subject-matter of the suits are the same, or, at least, so far involved as to establish the exclusive jurisdiction of the court first obtaining it.

It is contended that the suit in the state court is not one in rem, but purely in personam. It may not be purely a suit in rem, but enough of its nature has been disclosed by the foregoing statement to show that, if the suit in this court should proceed to the dissolution of the corporation and the disposition of all of its property, and thereafter the plaintiff should prevail in the suit in the state court, the action taken by this court would have deprived him of much of the relief therein sought. There would be no property left to turn over to the corporation. It would have no franchise to protect. All of the elements of the trust would have been dissipated. The responsibility of the trustees and the beneficiaries to answer to a personal judgment, alone, would remain. The defendants, being residents of Illinois, even that benefit might, under certain circumstances, be lost. It is also apparent that, in order to effectually grant and insure to the plaintiff the relief sought by him, it might, in the course of proceedings, become necessary for the court to take charge of the property of the defendant railway company.

Jurisdiction over property acquired by the state court on qualifica-

tion of the receiver is not lost by the giving of a supersedeas pending appeal; but it merely suspends the order of appointment.

"The possession of the res vests the court which has first acquired jurisdiction with the power to hear and determine all controversies relating thereto, and for the time being disables other courts of co-ordinate jurisdiction from exercising a like power. This rule is essential to the orderly administration of justice, and to prevent unseemly conflicts between courts whose jurisdiction embraces the same subjects and persons.

"Nor is this rule restricted in its application to cases where property has been actually seized under judicial process before a second suit is instituted in another court, but it often applies as well where suits are brought to enforce liens against specific property, to marshal assets, administer trusts or liquidate insolvent estates, and in suits of a similar nature where, in the progress of the litigation, the court may be compelled to assume the possession and control of the property to be affected. The rule has been declared to be of especial importance in its application to federal and state courts. Peck v. Jenness, 7 How. 612 [12 L. Ed. 841]; Freeman v. Howe, 24 How. 450 [16 L. Ed. 749]; Moran v. Sturges, 154 U. S. 256 [14 Sup. Ct. 1019, 38 L. Ed. 981]; Central Bank v. Stevens, 169 U. S. 432 [18 Sup. Ct. 403, 42 L. Ed. 807]; Harkrader v. Wadley, 172 U. S. 148 [19 Sup. Ct. 119, 43 L. Ed. 399]." Farmers' Loan, etc., Co. v. Lake St. R. Co., 177 U. S. 51, 20 Sup. Ct. 564, 44 L. Ed. 667.

Jurisdiction over property by the state court, so as to withdraw it from the jurisdiction of the federal court in the same territory, does not necessarily depend upon possession, but is acquired as soon as a receiver has been appointed and has qualified. Palmer v. Texas, 212 U. S. 118, 29 Sup. Ct. 230, 53 L. Ed. 435.

The effect of a supersedeas in the state of Washington is the same as in the state of Texas, the statute of which was under consideration in Palmer v. Texas, supra. Fawcett v. Superior Court, 15 Wash. 342, 46 Pac. 389, 55 Am. St. Rep. 894.

It is contended that this case is controlled by the principle laid down in Shields v. Coleman, 157 U. S. 168, 15 Sup. Ct. 570, 39 L. Ed. 660; but in that case, before there was an attempt to appoint a receiver and take possession of the property by the second proceeding, the first receiver had been discharged and the property restored to the owner, who had given a bond for the forthcoming of the property to answer the judgment. Palmer v. Texas, supra. This distinction will more clearly appear from an examination of the case of Shields v. Coleman.

"While the validity of the appointment made by the Circuit Court on June 6, 1892, cannot be doubted, yet, when that court thereafter accepted a bond in lieu of the property, discharged the receiver, and ordered him to turn over the property to the railroad, and such surrender was made in obedience to this order, the property then became free for the action of any other court of competent jurisdiction. It will never do to hold that after a court, accepting security in lieu of the property, has vacated the order which it has once made appointing a receiver and turned the property back to the original owner, the mere continuance of the suit operates to prevent any other court from touching that property." Shields v. Coleman, 157 U. S. 168, 15 Sup. Ct. 570, 39 L. Ed. 660.

In questions of conflicting jurisdiction, to insure the orderly administration of justice, the substance and not the form should be kept in view. Under the allegations of the complaint in the state court and the prayer for general relief, the proceedings might result in the

winding up of the insolvent corporation. The complaint therein was broader in some respects than the bill of complaint in this court. Moran v. Sturges, 154 U. S. 256, 14 Sup. Ct. 1019, 38 L. Ed. 981; Wabash R. Co. v. Adelbert College, 208 U. S. 38, 28 Sup. Ct. 182, 52 L. Ed. 379; Louisville Trust Co. v. Knott, 130 Fed. 820, 65 C. C. A. 158; Mound City Co. v. Castleman et al., 187 Fed. 921, 110 C. C. A. 55; Zimmerman v. So. Relle, 80 Fed. 417 (C. C. A. Eighth Cir.) 25 C. C. A. 518; Meritt v. American Steel Barge Co., 79 Fed. 228 (C. C. A. Eighth Circuit) 24 C. C. A. 530; Hatch v. Bancroft Thompson Co. (C. C.) 67 Fed. 802; Colston v. Southern Home Bldg. & L. Ass'n (C. C.) 99 Fed. 305; Sullivan v. Algrem et al., 160 Fed. 366 (C. C. A. Eighth Cir.) 87 C. C. A. 318; Interstate Ry. Co. v. Philadelphia, B. & T. St. Ry. Co. et al. (C. C.) 164 Fed. 770; Buck v. Colbath, 70 U. S. 334, 18 L. Ed. 260; De La Vergne Refrig. Co. v. Palmetto Brew. Co. (C. C.) 72 Fed. 579; 25 Cyc. 1454 et seq.

The petitioner asks that the receiver herein be discharged and the suit stayed, pending the final determination of the proceedings in the state court. Hennessy v. Tacoma Smelting & Refining Company, 129 Fed. 40, 64 C. C. A. 54; I. & M. G. Co. v. E. S. Co., 58 Fed. 732, 7 C. C. A. 471.

The plaintiffs may desire to pursue some other course. The receiver may be discharged and the suit dismissed, unless the plaintiffs elect that it be merely stayed, as suggested by the petition.