POWERS et al. v. BLUE GRASS BUILDING & LOAN ASS'N et al.

(Circuit Court, D. Kentucky.    March 25, 1898.)

No. 6,662.

1. ASSIGNMENT BY BUILDING AND LOAN ASSOCIATION — AUTHORITY OF SHARE HOLDERS.

The directors of a building and loan association have no authority, either under the general assignment statute of Kentucky or at common law, to make a valid assignment for the benefit of creditors, without authority from the shareholders, when the corporation is not in fact insolvent.

2. DEPOSING DIRECTORS—INVALID ELECTION.

The shareholders of a building and loan association cannot depose directors whose term of service has not expired, and elect a new board.

3. APPOINTMENT OF RECEIVER—CORPORATE DISORGANIZATION.

The directors of a building association, without consulting the shareholders, made an assignment for the benefit of creditors, and delivered the corporate assets to the assignee. The shareholders repudiated the assignment, and elected a new board of directors, who elected new officers. The old officers and directors refused to recognize this result. Shareholders brought suit to set aside the assignment, and restore the assets to the corporation. *Held*, that a receiver *pendente lite* should be appointed.

4. ASSIGNEE'S POSSESSION—PROPERTY IN POSSESSION OF COURT.

Under Ky. St. § 76, requiring an assignee to give bond and state his accounts in a county court, assets in his possession are not in the possession of the court.

5. PETITION FOR DIRECTION OF COURT—STATUS OF TRUST PROPERTY.

Where, under the Kentucky statute, an assignee petitions the circuit court for direction in the conduct of his trust and settlement of his accounts, such court does not thereby acquire possession or control of the trust property.

6. CONFLICT OF JURISDICTION—DIFFERENT ISSUES AND RELIEF.

The pendency in a state court of a suit brought by an assignee for the construction of a deed of assignment made by a building and loan association, and the adjudication of the right under the deed of the different classes of shareholders inter sese, is no obstacle to the prosecution, in a court of the United States, of a suit by shareholders to annul the deed of assignment as invalid, and recover the assets from the assignee.

Humphrey & Davie and C. H. Stoll, for complainants.

Helm, Bruce & Helm, Wm. Rogers Clay, and Bronston & Allen, for defendants.

LURTON, Circuit Judge.  This case comes on upon a motion to appoint a receiver pendente lite for the Blue Grass Building & Loan Association, a corporation organized under the law of Kentucky. The motion is based upon the bill, amended and supplemental bill, and exhibits, and upon a mass of ex parte affidavits, taken either in support or opposition to the motion, and also upon a transcript of a record from the Fayette circuit court of a suit there pending, which is filed for the purpose of showing that that court has obtained jurisdiction of the subject-matter here involved, and that such prior jurisdiction should not be interfered with by this court.   The complainants are stockholders in the Blue Grass Building & Loan Association, and citizens of states other than Kentucky.   The defendants are the association and Bishop Clay, to whom the directors and officers of the association, by a deed of general assignment, on the 31st day of January, 1898, conveyed all the assets and books and papers

86 F.—45

of the association, with authority to wind up the association by collecting its assets, selling its property, and making distribution of proceeds among the shareholders according to their rights, after paying debts and expenses of the trust. I shall content myself with a mere statement of my conclusions.

1. This general deed of assignment to Clay of January 31, 1898, does not appear to have been made with any evil intent, nor to be fraudulent in fact. But it was made without authority from the stockholders, and under circumstances which subject the board to very just criticism. The indebtedness of the association to creditors proper was absolutely frivolous. Not more than 6 per cent. of the shareholders had given withdrawal notices, and, if they be treated as in a sense creditors, the cash in the treasury was still largely more than sufficient to have paid in full every creditor proper, and to every such withdrawing stockholder everything which, under the by-laws, they had a present right to demand. The mortgages held by the association, together with its real estate, cash on hand, and other assets, amounted to approximately $300,-000. There was a difference of opinion as to the advisability of continuing in business under the law as declared by the court of appeals of Kentucky, and the stockholders had resolved upon a change in their methods of business so as to comply with the law as declared by the Kentucky court, and had adopted a plan of reorganization. Pending their efforts in this direction, the directors seem to have concluded that a continuance in business was not advisable, and the reorganization scheme an abortion. To, make an assignment which amounted to putting the association into liquidation without consulting their constituency was clearly a most illy advised act. The association was not insolvent. Its debts proper were insignificant. No trust had therefore arisen in favor of creditors. Neither are withdrawing stockholders to be regarded as creditors in the sense in which that word is used when so serious an act as that of an assignment is contemplated. Ninety-nine per cent. of the liability of this association at the date of this assignment was to its own shareholders as such. I am of opinion that under such circumstances the directors had no power, either under the general assignment statute of Kentucky or at common law, to make and execute the deed of assignment to Clay. The act was ultra vires the officers and directors of the association. Still it was an act which might have been ratified by the shareholders as a mode of liquidation within the general power of the corporation. But there has been no ratification, actual or implied. Upon the contrary, the shareholders in general meeting, assembled at the call of the directors, have rejected and repudiated the assignment, and demanded that it be retracted. They have gone perhaps further than their power justified, for since the filing of the original bill they have deposed their directors, and elected a new board, and the new board have elected new officers. This result has not been recognized by the majority of the old board, and thus we have the unusual spectacle of two sets of managing officers for this distressed corporation. The one set repudiate the deed of assignment,

and they represent apparently more than 80 per cent. of the whole stock. The old officers maintain that they have not been lawfully displaced, and stand by the deed of assignment.

2. Holding as I do, that the deed of assignment was a voidable act, and that, having been rejected by the shareholders, it is now a void act, it must follow that Clay has no authority to withhold from the corporation its assets, books, and papers. He is a mere trespasser, and withholds at his peril the property placed in his possession under the deed of January 31, 1898, from the association. The case for the appointment of a receiver is clear, unless the hand of this court is stayed as an effect of the bill pending in the state court, concerning which I shall shortly speak. If Clay has no title under the assignment, there ought to be a receiver pendente lite, because the question of his title cannot be finally or authoritatively decided upon a mere motion for a receiver, and before the cause is finally heard. No order can at this stage of the case be made directing that the association be placed in possession of its assets. Such an order would be premature. Neither would the court be justified, upon the facts as they now appear, even if this was a final decree, in restoring these assets to the custody of either the old officers and directors of the association or to those who claim to be their successors. The old managers, in abdicating their trust, as they did when they made the illegal assignment to Clay, have forfeited the confidence of their constituency, and should not be restored to power. The new board, I do not think, were lawfully elected under the charter and by-laws of the association. The action of the shareholders in deposing a board of directors whose term of service had not expired was irregular and illegal. Under such a condition of corporate disorganization it is proper that the corporate assets should go into the hands of a receiver until there can be elected a directorate which will lawfully represent those interested in them.

3. But it is said that this court ought not to appoint a receiver, or take cognizance of the question as to the validity of the assignment to Clay, because such a course will be in conflict with the prior jurisdiction of the Fayette circuit court touching the same subject-matter. This court has the highest respect possible for the Fayette circuit court, and will cheerfully withhold any action if by so doing it will interfere with the prior jurisdiction of that court over either the res or the subjects presented to this court for judgment. But it can be no disrespect to that court if this court simply maintains its own jurisdiction, and no more. But has that court obtained any such exclusive jurisdiction as will bring this court into conflict with that court if a receiver be appointed, and this suit be maintained for the single purpose of determining the validity of the assignment to Clay? First, as to the res, which is the property of the Blue Grass Association. The principle that, where property is in the actual possession of one court of competent jurisdiction, such possession cannot be interfered with by process out of another court, is well settled. Buck v. Colbath, 3 Wall. 334; Krippendorf v. Hyde, 110 U. S. 276, 4 Sup. Ct. 27; Byers v. McAuley, 149 U. S. 608, 13 Sup. Ct. 906;

Compton v. Railroad Co., 31 U. S. App. 486–523–530, 15 C. C. A. 397, and 68 Fed. 263. There are two classes of cases in which the court first obtaining jurisdiction should be suffered to proceed without any interference by process from another of concurrent jurisdiction. The first class consists of those cases in which the exercise of jurisdiction by one court will interfere with the prior possession of the res by another court of competent and concurrent jurisdiction. Krippendorf v. Hyde, 110 U. S. 276, 4 Sup. Ct. 27; Heidritter v. Oil-Cloth Co., 112 U. S. 294, 5 Sup. Ct. 135; Byers v. McAuley, 149 U. S. 608, 13 Sup. Ct. 906. The second class is where there are two suits pending in different courts of concurrent jurisdiction, in which the parties are the same, and which involve and affect the same subject-matter, and where the jurisdiction of neither is complete nor effectual unless it may, if necessary or proper, exercise exclusive dominion over the res in litigation. The cases relied upon by counsel for defendants of Gates v. Bucki, 12 U. S. App. 69, 4 C. C. A. 116, and 53 Fed. 961; Merritt v. Barge Co., 24 C. C. A. 530, 79 Fed. 228; Zimmerman v. So Relle, 25 C. C. A. 518, 80 Fed. 417; and Sharon v. Terry, 36 Fed. 337,—are cases belonging to the latter class. The conflict exists in such instances because the suits are in the nature of suits in rem. The mere fact of the pendency of two suits in personam between the same parties and upon the same identical cause of action, in courts of different jurisdictions, does not make a case in which the jurisdiction of one is impeded or interfered with by the action of the other. Stanton v. Embrey, 93 U. S. 548. To make a case of conflict, the two concurrent suits must involve relief against the same res. The distinction here drawn is recognized in the cases last cited, and is clearly indicated in Buck v. Colbath, 3 Wall. 334. If the parties are the same, and the issues the same, and the relief sought involves dominion over the same res, and cannot be effectually granted if dominion over the res be taken by process from another court, it is a case where the second court should regard the jurisdiction of the first as exclusive, and hold its hands until the court first obtaining jurisdiction has terminated the case then pending. In Buck v. Colbath, supra, the court said:

"But it is not true that a court, having obtained jurisdiction of a subject-matter of a suit, and of parties before it, thereby excludes all other courts from the right to adjudicate upon other matters having a very close connection with those before the first court, and, in some instances, requiring the decision of the same questions exactly."

And again, in speaking of the limitation of this rule, the court, in the same case, said:

"The limitation of the rule must be much stronger, and must be applicable under many more varying circumstances, when persons not parties to the first proceeding are prosecuting their own separate interests in other courts."

Applying these principles first to the question of the actual possession of the res, and then as to the identity of the suit pending in the state court, we reach these conclusions:

(a) The possession by Clay before he filed his petition in the Fayette circuit court was a possession taken and held by virtue of the deed of assignment to him. The fact that under the Kentucky act he was

required to give a bond in a county court, and to pass his accounts in that court, or might apply to that court for direction, did not make him an officer of that court, or give that court any exclusive possession or dominion over the trust estate.     While an administrator and a receiver are officers of the court appointing them, and their possession is the possession of the court, an assignee under the Kentucky statute is not in possession for any court, but holds under the deed appointing him.     This has been so often settled in reference to similar assignments, under like statutes, as to be no longer open to debate. Shelby v. Bacon, 10 How. 55; Purifier Co. v. McGroarty, 136 U. S. 237, 10 Sup. Ct. 1017; Morris v. Landauer, 6 U. S. App. 510, 4 C. C. A. 162, and 54 Fed. 23; Lehman v. Rosengarten, 23 Fed. 642; Ball v. Tompkins, 41 Fed. 486.

(b) The same Kentucky statute gave like authority to an assignee to apply by petition to the circuit court for direction in the conduct of his trust and for settlement of his accounts.     The petition filed by Clay did not change the character of his possession.     He remained in possession of the res after he filed that petition as assignee under the deed, and not under any appointment by or authority from the circuit court.     That court not only did not take possession of any part of the assets, but refused to permit him to pay into court money belonging to the trust.     The object of that petition was to administer his trust under the advice and direction of that court.     He submitted to it the construction of the deed and the rights of the different classes of shareholders for adjudication, and brought before the court as defendants one of each class to stand for and represent the class in settling rights under the deed inter sese.     The pendency of that suit has not placed the property of the association in grimeo legis.     Clay is just as completely in possession of the assets as he was the day before his suit was filed.     He is in possession as assignee, and not as a mere hand of the court.     The purpose of that suit is to wind up the trust under the deed, and is in actual furtherance of the scheme of liquidation sought to be carried out by and under an illegal and invalid general assignment.     No issue as to the validity of the deed is presented by that petition.     Its entire legality is assumed, and the court asked to aid the assignee by its advice and direction.     So far as any issues are presented for judgment, they are confined to such as arise under the deed and between those who may claim under it.     The purpose of the present suit is to recover the assets of the association from Clay as one who has illegally possessed himself of them through the dereliction of the corporate officers who had the management of the corporate affairs.     This suit attacks Clay's title.     If his title is good, that is the end of the suit.     That is the only issue, and its settlement in favor of the assignee closes this litigation.     This court could not, with proper respect for itself and for the state court, retain it for the purpose of interpreting the deed or adjudging the rights of creditors or shareholders thereunder.     That subject is within the exclusive jurisdiction of the state court.

But it is said that the purpose of this suit could be just as well accomplished by a suit in the Fayette circuit court, or by intervention in the pending suit.     Doubtless this is true.     This court would

be glad to have the whole matter disposed of by that court. But the complainants, as citizens of states other than Kentucky, have the constitutional right to bring this cause in a court of the United States. They have done so. If the court may grant the relief sought without interference with the proper jurisdiction of the Kentucky court, it must do so. It is also urged that, although neither the issues nor the parties are the same, and although that court may have no actual possession of the res, still the effect of this suit is to make ineffectual the jurisdiction of the state court. If this court should finally decide that the deed of assignment to Clay was invalid, the result would be that Clay would have no duties to perform as assignee, and no trust to have construed. But that does not show that this court, in the exercise of its proper jurisdiction over the issues under this suit, has interfered with the jurisdiction of the state court. The relief sought under the two suits is wholly different. The relief granted here may make the relief sought there unnecessary. In Buck v. Colbath, supra, Justice Miller calls attention to the necessity of looking closely to the nature of the relief sought when two cases pending in different courts are supposed to present a question of conflict of jurisdiction. He says:

"In examining into the exclusive character of the jurisdiction of such cases, we must have regard to the nature of the remedies, the character of the relief sought, and the identity of the parties in the different suits. For example, a party having notes secured by a mortgage on real estate, may, unless restrained by statute, sue in a court of chancery to foreclose his mortgage, and in a court of law to recover a judgment on his notes, and in another court of law in an action of ejectment to get possession of the land. Here, in all the suits, the only question at issue may be the existence of the debt mentioned in the notes and mortgage; but, as the relief sought is different, and the mode of proceeding is different, the jurisdiction of neither court is affected by the proceeding in the other. And this is true, notwithstanding the common object of all the suits may be the collection of the debt. The true effect of the rule in these cases is that the court of chancery cannot render a judgment for the debt, nor judgment of ejectment, but can only proceed in its own mode to foreclose the equity of redemption by sale or otherwise. The first court of law cannot foreclose or give a judgment of ejectment, but can render a judgment for the payment of the debt; and the third court can give the relief by ejectment, but neither of the others. And the judgment of each court in the matter properly before it is binding and conclusive on all the other courts. This is the illustration of the rule where the parties are the same in all three of the courts."

Bank v. Lanahan, 60 Md. 477, presented a case of supposed conflict, very much such as that here claimed, and is a well-reasoned opinion. I think there is no conflict, and that this court will only exercise its own proper jurisdiction in taking cognizance of this case, and in appointing a receiver pendente lite. It is evident that the best interests of all shareholders demand a speedy termination of this litigation. I have very plainly intimated my views as to the invalidity of the deed of assignment. I trust that an agreement can be reached as to a proper receiver. I will gladly appoint any one satisfactory to both sides. If no agreement can be reached, I will leave the selection of a receiver to Judge Barr, whose large acquaintance in the locality will enable him to select some one competent and willing to act.