### WARD et al. v. FOULKROD et al.

(Circuit Court of Appeals, Third Circuit. March 30, 1920.)

No. 2525.

1. **Courts ⟨⟩492—Court first obtaining control of property has jurisdiction.**

   Control over the property in controversy, it is everywhere conceded, is the test of jurisdiction in conflicts between courts of concurrent jurisdiction, and the court which first acquires such control is the one that first acquires jurisdiction.

2. **Courts ⟨⟩492—Court first obtaining control over property will retain jurisdiction, though action was first brought in another court.**

   Of two courts having concurrent jurisdiction of actions involving different issues and seeking different relief, but affecting the same res, that court which first gained actual possession of the res will retain jurisdiction thereover, though action was first brought in the other court.

3. **Courts ⟨⟩492—Court in which action was first brought has jurisdiction.**

   Where two courts may each take jurisdiction of a matter, that court in which the first action was brought, if the action be of a character that makes the court's dominion over the res essential to its judgment, or if the action be substantially the same as the one later brought in the other court, will acquire jurisdiction of the res on the commencement of the action and retain it to the end, although actual seizure thereof was first made by the other court in the later action.

4. **Courts ⟨⟩493(1)—Under rules of comity court in which action was last begun will surrender possession of res.**

   Under rules of comity, the court in which an action was last begun will surrender possession of the res, where action was first begun in another court and possession of the res was essential to judgment.

5. **Judgment ⟨⟩828(1)—Conclusiveness of state judgment under full faith and credit clause.**

   A judgment of a state court, embracing findings of fact and construing a statute of its own state, is conclusive on the federal courts.

6. **Corporations ⟨⟩609—State which creates corporation has alone power to dissolve it.**

   It is elementary that the state which creates a corporation alone has power to wind up its affairs and dissolve it.

---

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**7. Courts ⊜⇒493(3)—Court of state of corporation's domicile entitled to administer corporate property under its receivership.**

Proceedings were begun in the Chancery Court of Delaware for the appointment of a receiver of a Delaware corporation, but before the appointment of a receiver or seizure of corporate property, the federal court for Pennsylvania appointed a receiver to conserve those assets within Pennsylvania belonging to corporation which admitted its insolvency. *Held* that, where the Delaware court finally appointed a receiver, that tribunal being entitled to dissolve the corporation, and its judgment finding the corporation insolvent being conclusive, it was entitled to administer the property, and under rules of comity the federal court should surrender the property to it.

**8. Courts ⊜⇒492—Rules of comity apply between state courts and federal court sitting in another state.**

The rule of comity that a court in which an action is first begun is entitled to possession of the res, when it is indispensable to disposition of the action, applies where suit for appointment of receiver was first begun in Delaware, the domicile of the defendant corporation, although a receiver was first actually appointed by the federal court for Pennsylvania.

**9. Receivers ⊜⇒207—Ordinarily receiver has no powers outside jurisdiction of court appointing him.**

While a court of the domicile of a corporation may appoint a receiver and authorize him to take possession of its property in a foreign jurisdiction, the appointment confers no legal authority which the receiver can unaided and alone exert over the property in that jurisdiction, and he must apply for ancillary receivership in the jurisdiction where the property is found.

**10. Receivers ⊜⇒206—Domiciliary receiver not entitled to question eligibility of receiver appointed in other jurisdiction.**

A receiver of a Delaware corporation appointed by the Delaware state court cannot by virtue of that appointment attack the authority of a receiver appointed to conserve the property of the same corporation by the federal court situated in Pennsylvania, as, to have any standing in Pennsylvania, the Delaware receivers must bring ancillary proceedings.

**11. Receivers ⊜⇒48—Ordinarily a receiver should be an indifferent person.**

Receiver, deriving his authority, not from the parties at whose instance he is appointed, but from the court, should be an indifferent person, having no concern in the matter.

**12. Receivers ⊜⇒48—Appointment as receiver of attorney who represented corporation held not improper.**

Where a corporation was involved in emergency war work, which it was necessary to continue, *held*, that the appointment as receiver of a member of a law firm representing the corporation was, under all circumstances, not improper.

**13. Appeal and error ⊜⇒843(2)—Where federal court, which had appointed receiver, was not bound to deliver property to state receivers, other questions need not be reviewed on appeal by such receivers.**

Where receivers of Delaware corporation, appointed by a Delaware state court, were not by virtue of that appointment entitled to attack the authority of a receiver appointed to conserve the property of the same corporation by the federal court for Pennsylvania, and had no standing in such federal court, the determination, on appeal by the Delaware receivers from a decree denying their petition, of questions other than their lack of right, was unnecessary. (Per Buffington, Circuit Judge, specially concurring.)

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Bill by Andrew Wheeler and others, trading as Morris, Wheeler & Co., against the Badenhausen Company, in which John J. Foulkrod, Jr., was appointed receiver. Thereafter Christopher L. Ward and another, who were appointed receivers of the same corporation by the Delaware courts, petitioned for revocation of the appointment of said Foulkrod. From a decree denying the petition (260 Fed. 991), petitioners appeal. Affirmed.

Henry J. Scott, of Philadelphia, Pa., and Robert H. Richards, of Wilmington, Del., for appellants.

William W. Porter, M. Hampton Todd, and Wm. Y. C. Anderson, all of Philadelphia, Pa., for appellees.

Before BUFFINGTON, WOOLLEY, and HAIGHT, Circuit Judges.

WOOLLEY, Circuit Judge. The receivers of Badenhausen Company (a Delaware corporation), appointed by the Chancellor of the State of Delaware, petitioned the District Court of the United States for the Eastern District of Pennsylvania to revoke its appointment of a receiver for the same corporation, made after the commencement of the action in the State court, and to order its receiver to turn over to them all the property of the corporation within its jurisdiction. The District Court dismissed the petition. Thus there occurred a conflict of jurisdiction between State and Federal courts, raising the question, whether the State or the Federal court first acquired jurisdiction.

[1] Control over the property in controversy, it is everywhere conceded, is the test of jurisdiction in a conflict between courts of concurrent jurisdiction. When the question—which court has control over the property—is determined, it is equally well settled that the court which first acquired such control is the one that first acquired jurisdiction, and has the right thereafter to proceed with the action to its final determination without interference from the other court. Taylor v. Taintor, 16 Wall. 370, 21 L. Ed. 287; Bell v. Trust Co., 1 Biss. 260, Fed. Cas. No. 1,260. But just what constitutes "control over the property in controversy," and when and under what circumstances it arises, whether by priority of judicial seizure of the property by one court without regard to the pendency of an action in another, or by the commencement of an action in one court without regard to the subsequent judicial seizure of the property by another, is a question which has troubled, and still troubles, the courts, and has resulted in many perplexing and seemingly irreconcilable rulings. A classification of these rulings,—with reference only to their application to the issues of this case,—may be made as follows:

[2] Of two courts having concurrent jurisdiction of actions involving different issues and seeking different relief, but affecting the same res, that court which has first gained actual possession of the res will retain jurisdiction thereover, though action was first brought in the other court. Powers v. Blue Grass B. & L. Asso. (C. C.) 86 Fed. 705, 707, 708; Knott v. Evening Post Co. (C. C.) 124 Fed. 342

and cases; Farmers' Loan & Trust Co. v. Lake Street R. R. Co., 177 U. S. 51, 61, 20 Sup. Ct. 564, 44 L. Ed. 667; DeLaVergne Refg. M. Co. v. Palmetto Brewing Co. (C. C.) 72 Fed. 579, 584, 585; Empire Trust Co. v. Brooks, 232 Fed. 641, 146 C. C. A. 567; Gluck & Becker on Receivers, pp. 67, 68 (2d Ed. pp. 89–91); 10 Cyc. 1010.

[3] Where two courts may each take jurisdiction of a matter, that court in which the first action was brought, if the action be of a character that makes the court's dominion over the res essential to its judgment, or if the action be substantially the same as the one later brought in the other court, will acquire jurisdiction of the res on the commencement of the action and retain it to the end, although actual seizure thereof was first made by the other court in the later action. Instances of the application of this rule are found where two suits concern the same res but the suit first brought is in the nature of a suit in rem, requiring the court's dominion thereover in order effectually to grant the relief sought, such as an action brought to assert a government right against corporate property, or to enforce a lien against specific property, marshal assets, administer trusts or "liquidate insolvent estates." Farmers' Loan & Trust Co. v. Lake Street R. R. Co., 177 U. S. 51, 61, 20 Sup. Ct. 564, 44 L. Ed. 667; Powers v. Blue Grass B. & L. Asso. (C. C.) 86 Fed. 705, 708; McDowell v. McCormick, 121 Fed. 61, 57 C. C. A. 401; McKinney v. Landon, 209 Fed. 300, 306, 126 C. C. A. 226; Mound City Co. v. Castleman, 187 Fed. 921, 924, 110 C. C. A. 55; Texas v. Palmer, 158 Fed. 705, 85 C. C. A. 603, 22 L. R. A. (N. S.) 316; Palmer v. Texas, 212 U. S. 118, 129, 29 Sup. Ct. 230, 53 L. Ed. 435; Adams v. Mercantile Trust Co., 66 Fed. 617, 15 C. C. A. 1; Hirsch v. Independent Steel Co. (C. C.) 196 Fed. 104; O'Neil v. Welch, 245 Fed. 261, 157 C. C. A. 453; Williams v. Neely, 134 Fed. 1, 67 C. C. A. 171, 69 L. R. A. 232; 15 C. J. 1162; Gluck & Becker on Receivers, pp. 67, 68 (2d Ed. pp. 89–91).

[4] In a situation arising under the second classification, the court in which the later action is brought, on being informed of the action already brought in the other court and on being shown its priority of jurisdiction on one of the grounds indicated, will either refuse to allow suit to be instituted, State Trust Co. v. National Land Imp. Co. (C. C.) 72 Fed. 575; Gates v. Bucki, 53 Fed. 969, 4 C. C. A. 116; Howlett v. Improvement Co. (C. C.) 56 Fed. 161; 15 C. J. 1162; or, allowing its institution, it will regard the jurisdiction of the other court as exclusive and hold its hand until the court first obtaining jurisdiction has terminated the case there pending, Powers v. Blue Grass B. & L. Asso. (C. C.) 86 Fed. 705, 708; Vowinckel v. Clark & Sons (C. C.) 162 Fed. 991; Hardin v. Union Trust Co., 191 Fed. 152, 154, 111 C. C. A. 632; or, if for some reason the court has taken jurisdiction and has proceeded in the later action, it will, on appropriate proceeding instituted by the court first acquiring jurisdiction of the controversy, arrest its action and yield the jurisdiction it had assumed to the court actually having original jurisdiction, and thereafter lend its aid to that court in protecting and administering the subject

matter, Maguire v. Mortgage Co. of America, 203 Fed. 858, 122 C. C. A. 83.

Thus arises a rule of comity. It is based on infringement of the jurisdiction of one court by the action of another court, not where conflict has arisen from differences in the two actions, but where dominion of the subject matter has been acquired under one action, or where the two actions are substantially the same, and where the orderly administration of justice and a desire to avoid an unseemly conflict require the court which last took jurisdiction—though the first to acquire possession of the property—to surrender such possession, on appropriate application, to the court of concurrent jurisdiction which first acquired jurisdiction of the controversy. Empire Trust Co. v. Brooks, 232 Fed. 641, 645, 146 C. C. A. 567; Palmer v. Texas, 212 U. S. 118, 29 Sup. Ct. 230, 53 L. Ed. 435; Farmers' Loan Co. v. Lake Street R. R. Co., 177 U. S. 51, 20 Sup. Ct. 564, 44 L. Ed. 667; Adams v. Mercantile Trust Co., 66 Fed. 617, 15 C. C. A. 1; Maguire v. Mortgage Co. of America, 203 Fed. 858, 122 C. C. A. 83.

Being a rule of comity, we must inquire whether the rule is applicable in this case, considered with reference to the actions in the two courts; and, if so, whether it can be invoked in the proceeding here on review.

The relevant facts, shortly stated, are these:

In August, 1918, Kidwell, a stockholder of Badenhausen Company, a Delaware corporation, filed a bill in the Court of Chancery of the State of Delaware alleging insolvency of the corporation and praying the appointment of receivers

"to take charge of the assets, effects, business, and affairs of the said company * * * and further that such receiver or receivers, be authorized * * * to continue the business of the defendant company to the extent, at least, of completing its existing contracts."

After service, the defendant appeared, and, by its answer, denied insolvency.

In January, 1919, with the action in the State court pending, Andrew Wheeler and others (citizens of Pennsylvania), trading as Morris, Wheeler & Company, creditors of Badenhausen Company, filed a bill against that corporation in the District Court of the United States for the Eastern District of Pennsylvania, alleging that the corporation was "unable to provide for the payment of its obligations now maturing or about to mature," showing generally a situation requiring a receivership to conserve its assets, and praying the appointment of a receiver. Concurrently with the bill, the Badenhausen Company filed its answer, confessing all the allegations of the bill. Whereupon the District Court appointed John J. Foulkrod, Jr., receiver, with authority

"to take immediate possession of the * * * property, real and personal, of the said company, within the jurisdiction of this Court, for the purpose of conserving the assets of the said company; and * * * to continue the business of the said company * * * until the further order of the Court."

Under this decree the Federal receiver took possession of all property of the corporation within the jurisdiction of the District Court,

consisting mainly of two manufacturing plants situate in the State of Pennsylvania.

Ancillary to the receivership thus created by the District Court of the United States for the Eastern District of Pennsylvania, receivers were appointed by the District Court of the United States for the District of New Jersey for property in that State. One of these receivers was Foulkrod, the receiver originally appointed by the District Court in Pennsylvania.

In February, 1919, on hearing by the Court of Chancery of the State of Delaware and on proof of the proceedings in the District Court, including the corporation's answer admitting the plaintiff's allegation of its inability to meet its obligations then maturing, the Chancellor of the State of Delaware entered a decree holding the corporation "insolvent in that it is unable to pay its debts when and as they become due," and, thereupon, appointed receivers with authority

"to take charge of the estate, effects, business and affairs thereof and to collect the outstanding debts, claims and property due and belonging to the said company," and also, "to take such proceedings as may be necessary in the courts of any other State or of the United States to secure the aid of such courts, by the appointment of ancillary receivers or otherwise, in taking possession and charge of the property and assets of the said Badenhausen Company."

After qualifying, the State receivers, on March 4, 1919, filed a petition in the District Court of the United States for the Eastern District of Pennsylvania, reciting the proceedings pending in the two courts, and praying the court that it annul its order appointing a receiver and direct its receiver to turn over to them the property of the corporation in his hands.

With the petition of the State receivers for the annulment of the appointment of the Federal receiver pending in the District Court, Badenhausen Company, on March 6, 1919, appealed from the decree of the Court of Chancery to the Supreme Court of the State of Delaware,—the court of last resort of that State,—raising several questions on errors assigned, the principal one being the Chancellor's interpretation of the statute of the State of Delaware by which he found the corporation insolvent on its admitted inability to pay its debts when and as they became due. The Supreme Court of the State of Delaware, on June 27, 1919, affirmed the decree of the Chancellor in this and in all other particulars (107 Atl. 297), indicating by its opinion, however, that,

"If after the decree of this court shall be certified to the court below, a proper showing should be made to the Chancellor, he doubtless would, under the powers vested in him, make such modification of his decree as may be necessary to authorize the receivers appointed by him to continue the business of the corporation respondent below for the express purpose of conserving its assets and restoring it to a condition of solvency.

"Or if it be shown that the corporation respondent below had attained a condition in which it can meet its obligations in the usual course of business, or that there is a reasonable prospect that its business can be successfully continued, notwithstanding any deficiency of assets, the Chancellor would discharge the receivers and permit the corporation respondent below to resume its business."

Pursuant to this suggestion, addressed to his attention by petition of the State receivers, the Chancellor, in July, 1919, amended his decree appointing receivers by authorizing them

"to continue the business of Badenhausen Company, wheresoever the same may be conducted, with the usual powers in such cases and with such general and specific powers, with respect to assets outside the State of Delaware, as may be hereafter given them by courts in jurisdictions outside the State of Delaware that may appoint them ancillary receivers of assets in such jurisdictions, respectively."

Exemplified copies of the record of the appeal from the Court of Chancery to the Supreme Court of the State of Delaware and of the Chancellor's decree as amended after appeal were filed with the District Court while the petition of the State receivers for the annulment of its order appointing a receiver still was pending.

In November, 1919, for reasons given in its opinions previously filed, 260 Fed. 991, the District Court dismissed the petition of the State receivers, retained jurisdiction of the Badenhausen Company, and continued its receivership. From this decree the State receivers have brought this appeal.

[5-7] From this recital it is clear that there is not that difference in the actions pending in the two courts—if the jurisdiction thereof be considered as concurrent—which, under the decisions, raises a valid conflict of jurisdiction, and confers priority of jurisdiction on that court which has first seized the property, entitling it to the retention thereof until the conclusion of the litigation. In these actions, the parties are the same in the sense that each has asked for and has been granted the same relief concerning the same subject matter. The subject matter is precisely the same, being assets and property of the same corporation. The ground of action, namely, the corporation's inability presently to pay its debts, is the same; and the legal effect of that condition on its solvency, however differently it may have been regarded at the commencement of the two suits, is now the same, being established by the decree of the Supreme Court of the State of Delaware, which is binding alike upon the courts of that State and of the United States under the full faith and credit provision of the Federal Constitution. A judgment of a state court, embracing findings of fact and construing a statute of its own state, is conclusive upon federal courts. Waters-Pierce Oil Co. v. Texas, 212 U. S. 86, 87, 29 Sup. Ct. 220, 53 L. Ed. 417; McKinney v. Landon, 209 Fed. 300, 126 C. C. A. 226: Palmer v. Texas, 212 U. S. 118, 29 Sup. Ct. 230, 53 L. Ed. 435. The only differences we see in the two actions are in the periods of their inception and duration and in the measure of the relief permissible. The appointment of receivers by the Delaware Court was made in an action there first brought to administer the estate and continue the business of the corporation for a period of indefinite duration determinable later by the Chancellor according as the corporation arises or fails to arise from its condition of insolvency. The appointment of the receiver by the federal court was made in an action which was later brought to administer the estate and continue the business of the corporation to meet a present emer-

gency and to be continued, by express provision of the bill, only "temporarily." The relief actually granted in both actions was the conservation of corporate property. The action in the Federal court was limited to relief of this character, as manifestly it must have been, for it is elementary that the state which creates a corporation alone has the power to wind up its affairs and dissolve it. Parks v. U. S. Bankers' Corp. (C. C.) 140 Fed. 160; Maguire v. Mortgage Co., 203 Fed. 858, 122 C. C. A. 83. The action in the State court, while it included the relief of conservation of the corporation's property (beyond which it has not yet progressed), was ·not limited to relief of that character. It extended over the corporation, as long as its insolvency persisted, to the full measure of the jurisdiction conferred upon the Court of Chancery by the State of Delaware over insolvent corporations of its own creation.

It appears to us, therefore, that the actions in the two courts are such as clearly come within the rule that the court in which the first was brought acquired jurisdiction over its subject matter, though possession of its subject matter was first acquired through judicial seizure by the other court in an action subsequently brought, and that the District Court, on being apprised of the prior jurisdiction in the State court, would, on appropriate proceedings, recognize its infringement of that jurisdiction and surrender its own. If this rule is not followed, then, as stated by Mr. Justice Day in Palmer v. Texas, 212 U. S. 118, 129, 130, 29 Sup. Ct. 230, 234 (53 L. Ed. 435):

"A court of competent jurisdiction, which by the law of its own procedure has acquired jurisdiction of property, may find itself, as in this case, after final judgment maintaining its right over the property, at the conclusion of the litigation deprived of the subject-matter of the suit. Indeed, this case would be an apt illustration of that situation. The courts of Texas [Delaware] have sustained the right to the receivership, * * * but when it comes to enforcing the right to administer the property, if the Federal receivership is maintained the court of original jurisdiction finds itself stripped of the property and the same being administered in another court, which acquired its dominion over the property after it had become subject to the State jurisdiction."

This would be an intolerable situation, defeating utterly the right of a domiciliary court to administer the estate of an insolvent corporation whenever a stockholder or creditor of a corporation chose, after action brought, to hasten to a foreign jurisdiction and set up an independent and antagonistic receivership.

This, conceivably, might result in as many receiverships as there are jurisdictions in which property of the corporation is found, each court withholding from the domiciliary court the property it had seized and denying to that court any control over it.

What we have said in respect to the rules of law applicable to this case, considered in connection with the facts, has been upon the assumption that the jurisdictions of the State court and the Federal court are concurrent, notwithstanding the territorial limits of these courts are not the same. The argument of the appellants was based upon the proposition that the jurisdictions of the two courts are concurrent. The appellee, on the other hand, rather than meeting the ar-

guments advanced on that assumption, contended that the jurisdictions of the two courts are not concurrent because of the difference in the territory over which they respectively extend, and that a rule of comity between courts whose jurisdictions are territorially concurrent is not applicable, where, as here, the jurisdictions are territorially different.

[8] We are not convinced of this distinction. The same rule of comity arising from a conflict of jurisdiction, which courts freely follow when their jurisdictions are territorially the same, may be invoked a fortiori in a situation such as the one presented in this case where the court of the State of the domicile of the corporation seeks, under the laws of that State, to administer the affairs of one of its creatures, and, in order to do so, endeavors to acquire control, either directly or indirectly, of the property of the corporation located within the territorial limits of another court. If it were not allowed to do this, it would easily be possible for parties with conflicting interests to play one court against another and to use them as instruments to defeat rather than to aid the administration of justice. Indeed, in this case, the domiciliary court might eventually find it necessary, in order to enforce the laws of the State of Delaware against one of its creatures, to wind up the corporation and distribute its assets. By refusing to recognize in comity the jurisdiction of the domiciliary court, the court of foreign jurisdiction, having possession of some of the corporation's property, could effectually block any such action by permitting its receiver to continue the business of the corporation indefinitely. Thus a corporation would be kept alive and its assets preserved, when, under the laws of the State of its creation, the corporation should be dissolved and its assets liquidated. A sovereign state would thus be deprived by the action of a court in another jurisdiction from exercising its undoubted right to terminate the existence of its own creature. Manifestly, the rule of comity prevailing between courts of concurrent jurisdiction is in no sense abridged because the territorial jurisdictions of the two courts are not the same.

Returning to the case before us, we are of opinion that if the exact situation had been presented to the learned judge of the District Court of the United States for the Eastern District of Pennsylvania by appropriate proceedings, he would have recognized the applicable rule of law and would have yielded his jurisdiction in a manner consistent with the rights of stockholders and creditors both in the jurisdiction of his court and of the Court of Chancery of the State of Delaware. There arises, therefore, another question, which is, whether the procedure which was taken, and, in consequence, the court's action therein, were proper.

[9, 10] The proceeding which the State receivers instituted to gain possession of the corporation's assets within the jurisdiction of the District Court foreign to that of their appointment was by petition asking that court to annul its order appointing a receiver and to direct its receiver to turn over to them all the corporation's property in his hands. However valid such a proceeding may be where the jurisdictions of both courts are territorially the same, Empire Trust Co. v.

Brooks, 232 Fed. 641, 146 C. C. A. 567, the proceeding is not in accord with that which prevails generally where a corporation's assets are spread over several jurisdictions, nor is it in accord with that which the Chancellor of the State of Delaware particularly contemplated in the administration of this corporation's estate. This is evident from the Chancellor's decree appointing the State receivers, in which. he authorized them

"to take such proceedings as may be necessary in the courts of any other state or of the United States *to secure the aid of such courts by the appointment of ancillary receivers, or otherwise, in taking possession and charge of the property and assets of the said Badenhausen Company.*"

It is evident also from his amended decree authorizing the State receivers

"to continue the business of the Badenhausen Company wheresoever they may be conducted, with all the usual powers in such cases *and with such general and specific powers, with respect to assets outside the State of Delaware as may be hereafter given them by courts in jurisdictions outside the State of Delaware, that may appoint them ancillary receivers of assets in such jurisdiction, respectively.*"

These parts of the Chancellor's decree are in complete harmony, with the general rule that a receiver, appointed by a court of chancery, has no legal status outside the territorial jurisdiction of the court appointing him. The court has no power beyond the bounds of its jurisdiction, and can confer none upon its receiver. He receives his powers from the court and can only exercise them within its jurisdiction. There is, of course, the familiar exception to this general rule, which concerns the right of a receiver to bring suit in a foreign jurisdiction when he has been vested by statute with the title of the corporation's property; but the exception relates to the right of a receiver, as a quasi assignee of the property, to bring suit; it does not extend to a receiver, who, as under the Delaware law (Section 3884, Revised Code), is vested with the corporation's title to personal property but not with its title to real property, the right to have the corporation's property of both kinds unconditionally surrendered to him by a court foreign to that of his appointment, as broadly demanded by the petition of the State receivers in this case.

While a court of the domicile of a corporation may appoint a receiver and authorize him to take possession of its property in a foreign jurisdiction, as did the court in this case, the doctrine seems universal that the appointment confers no legal authority which the receiver can, unaided and, alone, exert over the property in that jurisdiction. What then is to be done? The same question was asked in Maguire v. Mortgage Co. of America, 203 Fed. 858, 859, 122 C. C. A. 83, 84, and was answered by the Circuit Court of Appeals for the Second Circuit as follows:

"Well-established equity procedure provides for just such a situation. When a stockholder's suit has been brought in the courts of the state which created the corporation and a receiver has been appointed there, the federal courts in other states will protect property within their jurisdictions by the appointment of ancillary receivers. Parks v. U. S. Bankers' Corp. (C. C.) 140 Fed. 160; Haydock v. Fisheries Co. (C. C.) 156 Fed. 988; Hutchinson v. American Palace Car Co. (C. C.) 104 Fed. 182."

(In Maguire v. Mortgage Co., as in the instant case, the appellate court was not called upon to determine whether, under extraordinary circumstances, the District Court as a court of equity might intervene to protect property of a foreign corporation while awaiting action in the court of primary jurisdiction.)

This is the rule of comity which impels the court of foreign jurisdiction to render aid to the court of primary jurisdiction in the administration of the corporation's assets by appointing on application ancillary receivers. 23 R. C. L. pp. 140–148. Of course, in yielding to this rule, the court to which application is made has the right to determine for itself who the ancillary receivers shall be. While a court when acting in comity to a distant court of coordinate jurisdiction will be careful to appoint receivers amenable to its control, it usually appoints, for obvious reasons, at least one of the receivers appointed by the domiciliary court to act with one of its own selection.

The appropriate proceeding in such a case as this (which is readily distinguishable from O'Neil v. Welch, supra, and similar cases where the foreign court had no rights to be preserved) is not by application of the receivers appointed by the court of primary jurisdiction addressed to the court of foreign jurisdiction that it summarily discharge its receiver and direct him to turn over to them the corporation's property in his hands, but is by application to that court praying it to discharge its receiver after he has passed his account and appoint ancillary receivers. When the prayer of such a petition has been granted and ancillary receivers have been appointed, all rights, those of the domiciliary court and of the foreign court, and of all stockholders and creditors of the corporation in both jurisdictions, will fall into their proper places and will be duly cared for and protected in the orderly administration of the estate. If such an application had been made in this case, we apprehend the District Court would have recognized and have acted upon the rules we have discussed. But as the application that was made was not one to which the District Court was required to respond by yielding its jurisdiction in the manner demanded, we find that its action was without error and that its decree should be affirmed.

In order, however, that there shall be no misunderstanding as to what we consider to be the rights of the receivers of the State court in future appropriate proceedings looking to the appointment of ancillary receivers in jurisdictions foreign to that of their appointment, we direct that the order appealed from be modified so as to provide that the dismissal of the petition shall be without prejudice to the right of the Delaware receivers to institute appropriate proceedings for the appointment of ancillary receivers for the property of the corporation now in the hands of the receiver appointed by the District Court of the United States for the Eastern District of Pennsylvania.

[11, 12] Though not questioned by the petition, the eligibility of Foulkrod, the receiver appointed by the District Court, was attacked at the argument on the ground that he is a member of the law firm representing the corporation in this litigation, and that he is, therefore, not such a disinterested and impartial person as a receiver

should be. Of course, the law intends that a receiver, deriving his authority, not from the parties at whose instance he is appointed, but from the court, should be an indifferent person, who, having no concern in the matter, would not be induced or inclined to act for any particular interest, but would guard equally the rights of all. Coy v. Title Guarantee & Trust Co. (C. C.) 157 Fed. 794; Pennsylvania Steel Co. v. New York City Ry. Co., 198 Fed. 721, 728, 736, 117 C. C. A. 503. But this rule is not inflexible when confronted by unusual circumstances such as existed, we think, in this case. When receivers were appointed by both State and Federal courts, the corporation was under contracts with the United States, operating through the Emergency Fleet Corporation, for a large amount of work in connection with shipbuilding. Continuance of these contracts and completion of the work under them were desired equally by the Emergency Fleet Corporation and both courts appointing receivers. This involved financial rearrangements between the Fleet Corporation and the receiver appointed by the District Court. As the Fleet Corporation, whose interest in the receivership was substantial, was satisfied with the receiver appointed by the District Court and has appeared in this proceeding asking his continuance, we cannot say there was impropriety in his appointment.

It is not necessary to discuss the motion to dismiss the appeal in view of our conclusion that the decree below must be

Affirmed.

BUFFINGTON, Circuit Judge (concurring). [13] In order to prevent the threatened destruction of its security by adverse legal proceedings, a creditor of the corporation, whose claim against it was in excess of $3,000 and whose citizenship was diverse, invoked such federal jurisdiction in the court below over the debtor's property within the federal court's territorial limits and that court appointed one Foulkrod its receiver for such intra-jurisdictional property.

Thereafter, that court denied a petition, praying

"that the said appointment of John J. Foulkrod, Jr., as receiver of said defendant corporation, be revoked and that the said receiver be forthwith directed to turn over all of the books, papers, documents, property and assets of said corporation to Christopher L. Ward and Frank A. Morehead, Esquires, the receivers appointed by the said Chancery Court of the State of Delaware."

Error in the refusal of this petition is the question before us, and as to such alleged error I agree with the court in its conclusion that

"the application that was made was not one to which the District Court was required to respond by yielding in the manner demanded; we find that its action was without error and that its decree should be affirmed."

In concurring in deciding the above-stated single question, which alone, in my judgment, is now before this court for decision, namely, that no error was committed by the court below in making the order of dismissal appealed from and now affirmed, I record the fact that I confine my concurrence to that single question. I do so because I do

not regard as here involved the relative federal and state jurisdictional questions that might possibly hereafter arise in this receivership nor do I regard as here involved, or a subject of present decision by this court what course the court below should hereafter follow when some other application or proceeding is hereafter made or shall be taken in the further administration of this receivership. Confining, therefore, my concurrence to deciding that the court below has not erred in making the order in review, I refrain from discussing or deciding any view upon any other matter or thing touching future action by the court below or the nature and scope of its jurisdiction in this receivership.